Syllabus.

R. M. THOMSON V. WM. LOCKE ET AL.

66   383
75   614

(Case No. 5509.)

1. VENUE—It is the general rule that every inhabitant of this state must be sued in the county of his domicile; and if from a petition it appears that a suit is brought in a county other than that of the defendant's domicile, objection may be made to the venue of the suit unless the petition states facts which bring it within one of the exceptions to the general rule.

2. SAME—RECOVERY OF LAND—STATUTE CONSTRUED—A suit for the recovery of land, as used in the statute specifying exceptions to the general rule as to venue, means an action of ejectment, trespass to try title, or suit to recover the land itself. The "recovery of land" has reference to the possession, and "damages thereto" has reference to an injury to the possession or to the freehold or estate. (Miller v. Rusk, 17 Tex., 171.)

3. SAME—ENCUMBRANCE—In a legal sense, the word "encumbrance" means an estate interest or right in lands, diminishing their value to the general owner; a paramount right in, or weight upon, land which may lessen its value.

4. SAME—LEGISLATIVE INTENTION—Under the law in force prior to the Revised Statutes no suits affecting the right to land were required to be brought in the county where the land was situated, except such as could be maintained as actions of trespass to try title. The intention of the legislature since, in increasing the classes of suits affecting the right to land which should be brought in the county where the land was situated, has been to provide the venue in all cases in which the title to land should be in controversy.

5. TRESPASS TO TRY TITLE—LOCATION AND SURVEY—Under the law in force prior to the Revised Statutes, the action of trespass to try title could be maintained to enforce the right acquired by locations upon land; but under the Revised Statutes that action can be maintained upon no right lower than that acquired by location and survey.

6. SAME—VENUE—There is nothing in the nature of the right secured by the location of a valid land certificate which would require it to be adjudicated in a county other than that in which the land is situated, when the same right advanced one degree by the ministerial act of the surveyor must be there adjudicated, unless the right so to have it be waived by a defendant.

7. SUIT TO QUIET TITLE—TECHNICAL MEANING—Considered technically, a suit to quiet title, except in those cases in which it is permitted to establish a right between one person and many others claiming distinct and individual interests, is limited to cases in which a person in possession seeks relief against one who has repeatedly and without success sought to obtain possession by the common law action of ejectment.

8. SAME—STATUTE—But the suits to quiet title contemplated by the statute regulating the venue of suits are of broader purpose, embracing suits founded even on equitable titles instituted to remove cloud from such title, and suits necessary, as occasion may require it, to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right.

9. SAME—EQUITY—The rules of equity that one will not be quieted in his title until he has established it at law, and that one not in possession cannot maintain an action to remove cloud from his title, can have no application in the courts of this state, which in the same action may determine the right, be it legal or

equitable, and give such relief as the nature of the case may require. See opinion.

10. TITLE—VENUE—It has at all times been held that the title between adverse litigants should be settled in the county where the land is situated. (Authorities cited.) The county surveyor is not exempt from the general rule which permits all persons to be made parties to a suit, who are necessary to a complete determination of the contested right, and to the granting of the full relief to which the holder may be entitled. Under this rule, if the jurisdiction is properly invoked at the place where the suit is brought, by reason of the subject matter of the action, it is immaterial that some of the parties necessary to full relief may not be resident in the county in which the action is brought.

11. PRACTICE—The plaintiff's petition asserted that the claim of defendant to the land in controversy was barred by the provisions of the constitution. Exhibits attached to the petition showed what lands the defendant asserted title to, and when the certified copies of land certificates, and of certificates for unlocated balance certificates issued. Upon general exception by the defendant. *Held,* the exhibits did not qualify or destroy the general averment that the claims were barred. If it was deemed necessary that the date of issuance of the original certificates should appear from the petition, that question should have been raised by special exception.

12. CASES REVIEWED—Harrington v. Williams, 31 Tex., 448; Watkins v. Kerchain, 10 Tex., 375; Railway Company v. Locke, 63 Tex., 623, reviewed.

APPEAL from Kinney. Tried below before the Hon. Thos. M. Paschal.

The petition of plaintiff, R. M. Thomson, was filed March 1, 1884. March 4, 1885, the judgment of the court was rendered sustaining exceptions to the petition and dismissing the case. The allegations of the petition are stated in the opinion of the court.

*Rector, Moore & Thomson,* for appellant, cited: Laws of 1882, p. 5; R. S., 4795, 1198; Throckmorton v. Davenport, 55 Tex., 236; DeMontel v. Speed, 53 Tex., 339; Sherwood v. Fleming, 25 Tex. Sup., 429; Commissioner v. Smith, 5 Tex., 480; Railway Company v.Randolph, 24 Tex., 342; Tabor v. Commissioner, 29 Tex., 520; Railway Company v. Locke, 63 Tex., 623; Edwards v. James, 13 Tex., 54; Winder v. Williams, 23 Tex., 601; Masterson v. Cundiff, 58 Tex., 473.

*Ogden, Ogden & Johnson,* and *Jno. A. & N. O. Green,* for appellees, cited: R. S., 1198; Railway Company v. Locke, 63 Tex., 623; Masterson v. Cundiff, 58 Tex., 473; R. S., 3902; Edwards v. James, 13 Tex., 54; Constitution of 1876, art. 14, sec. 2; Winder v. Williams, 23 Tex., 604; Herrington v. Williams, 31 Tex., 448.

STAYTON, ASSOCIATE JUSTICE—This action was brought in the district court for Kinney county, to which Crockett county was attached

for judicial purposes, to compel Wm. Locke, who is the surveyor of the Bexar land district, of which Crockett county is a part, to survey certain lands therein situated which had been located by the appellant. His petition alleged that the land which he sought to have surveyed was vacant and unappropriated public land, upon which he had made valid locations under valid claims against the state for land, the locations having been made in the office of Locke, in the county of Bexar, that he had tendered the necessary fees, and requested the making of the surveys, which the surveyor refused.

The petition further alleged that the same land which he sought to have surveyed was claimed by the New York and Texas Land Company, Limited, a corporation incorporated under the laws of the state of New York, and having an office and agent in Anderson county, Texas, for the transaction of its business. The petition then alleges that of the lands claimed by plaintiff "as indicated in the foregoing paragraphs of the petition under the file and entry, as shown by 'exhibit A,' the defendant, the New York and Texas Land Company, Limited, assert some sort of a pretended claim to a large part thereof, as will more fully appear in 'exhibit B,' hereto attached and made a part of this petition, wherein the field notes of such tract of land so claimed by said defendant, adversely to this plaintiff, and the certificates, by virtue of which the certificates were made for said defendant or its vendors, including its number, and the quantity of land called for by it, appears. Plaintiff says, that said field notes of all said land so claimed by said defendants, and said defendant's claim to all the land claimed by it thereunder, with the exception indicated in paragraph four of this petition, are null and void, and constitute no claim to the lands therein described, as against this defendant, that said field notes and the certificates under and by virtue of which they were made, were returned to the general land office of Texas, after they were barred by the statute of limitation and were null and void against all persons whomsoever."

The exhibits showing the land claimed by the defendant corporation give the field notes of the several tracts, time the surveys were made, and the time when these were returned to the general land office, and also the dates when the several evidences of right to land, under which the locations were made, were issued from the land office. Many of those locations were made under certified copies of land certificates, and many of them under certificates for unlocated balances; and all of them appear to have issued from the general land office within five years prior to the time at which, with the surveys made under them,

they were returned to the land office. The exhibits, however, did not show when the original certificates were issued, nor was there anything to show that the certified copies of the original certificates, or the certificates for unlocated balances were returned, with the surveys under them, to the land office within five years after the original certificates were issued.

The petition prayed for "judgment cancelling the pretended title and pretended certificates under which the defendant, the New York and Texas Land Company, Limited, claims said land sued for by plaintiff, and removing all clouds cast upon plaintiff's title by reason of the pretended claim so set up by said defendant." It also prayed for a writ of *mandamus* to compel the surveyor, Locke, to survey the lands described, record the field notes, and return the same, with the certificates, to the general land office.

The defendant, Locke, who was alleged to be a resident of Bexar county, filed an exception which was sustained. That was as follows: "Now comes the defendant, W. M. Locke, and says that this court ought not to have and maintain further jurisdiction of this cause as against this defendant, because it appears from plaintiff's petition that this defendant is a citizen and resident of Bexar county, Texas, wherein he should be sued if plaintiff has any cause of action against him, whereof defendant prays judgment of the court."

The other defendant filed a general demurrer, which was also sustained and the cause was dismissed. It is urged that the exception filed and urged by the surveyor was not sufficient to raise the question of venue. The general rule in this state is that every inhabitant thereof must be sued in the county of his domicile, but to this rule there are many exceptions specified by the statute. R. S., 1198.

If it appears, from a petition, that an inhabitant of this state is sued in a county other than that of his domicile, then, unless the petition shows that the action is properly so brought by reason of the existence of such facts as create an exception to this general rule, the objection to the venue may be made as it was in this case. The question then arises, whether there are facts stated and relief sought in this case which bring it within any of the exceptions to the general rule.

The thirteenth sub-division of R. S., Art. 1198, provides that "suits for the recovery of land or damages thereto, suits to remove incumbrances upon the title to land, suits to quiet title to land and suits to prevent or stay waste on lands must be brought in the county in which the land, or a part thereof, may lie."

Under the former decisions of this court it is evident that the present suit is not one to recover land or damages thereto, within the

meaning of the statute. "An action for the recovery of lands has a well known and definite signification, and means an action of ejectment, trespass to try title, or suit to recover the land itself." Hearst v. Kuykendall, 16 Tex., 329.

"The 'recovery of land,' manifestly has reference to the possession; and 'damages thereto' as manifestly has reference to an 'injury to the possession, or to the freehold, or estate.'" Miller v. Rusk, 17 Tex., 171.

It is not believed that this is a "suit to remove incumbrances upon the title to land." The word "incumbrance," in a popular sense, might include an illegal claim set up to land, under such state of facts as would apparently give title, when in fact no title existed. Thus used it would be the equivalent of the words "cloud upon title." In a legal sense the word "incumbrance" means, "an estate, interest or right in lands, diminishing their value to the general owner, a paramount right in or weight upon land which may lessen its value." Abbott's Law Dictionary.

It is claimed that one of the leading purposes of this suit is "to quiet the title to land." If this be true, then the suit was properly brought in Kinney county. A comparison of the law now in force with former laws regulating venue, evidences the intention of the legislature to fix the venue of cases, affecting the title to land, in the county in which the land may be situated, in cases in which this was not done by the former laws. All but the first clause of the statute which we have quoted, are additions to the act of December 10, 1863, regulating venue. P. D., 1432.

An examination of the several sub-divisions of R. S., Art. 1198 shows an intention on the part of the legislature to require such actions as may affect, or are brought to secure title, either legal or equitable, to land, to be brought in the county in which the land is situated. The eleventh sub-division of the act of December 10, 1863, only required such actions as might be brought under the statutes regulating actions of trespass to try title to be brought in the county where the land was situated; while the law now in force requires actions to be brought in the county in which the land is situated which cannot be brought and maintained as actions of trespass to try title. The evident intention was to provide the venue in all actions in which the title to land was in controversy; and so, whether the title sought to be enforced or protected was of such dignity as to authorize an action of trespass to try title, or of such inferior grade as not to entitle the holder of it to resort to and have all the statutory rights which pertain to that action. Under the law in force prior to the adoption of the Revised Statutes the appellant might have maintained an action

of trespass to try title upon his *locations* (P. D., 5303); and the action would have been properly brought in Kinney county.

Under the Revised Statutes (Art. 4795), no action of trespass to try title can be maintained upon a mere *location* under a valid land certificate, but *location* and *a survey* is the lowest evidence of right on which this statutory action can be maintained. From February 5, 1841, until the adoption of the Revised Statutes, not only was a *location*, made under evidence of right to land, recognized by the laws of this state as it is now recognized, as property, and secured by the same guaranties as other property; but it was then expressly declared that "all certificates for headrights, land scrip, bounty warrants, or any other evidence of right to land recognized by the laws of this government, which have been located or surveyed, shall be deemed and held as sufficient title to authorize the maintenance of actions of ejectment, or trespass or any other legal remedy given by law; all laws to the contrary notwithstanding." P. D., 5303.

There is certainly nothing in the nature of the right secured by the location of a valid land certificate which would require it to be adjudicated in a county other than that in which the land is situated, when the same right advanced one degree by the ministerial act of the surveyor must be there adjudicated, unless the right so to have it be waived by a defendant. The action to quiet title to land, required to be brought in the county in which the land is situated, cannot be the action technically known as an action or suit to quiet title, but must embrace all that class of cases necessary to the protection of the feeblest right to land recognized by law, but not declared such as will support an action of trespass to try title or like remedy.

Considered technically, a suit to quiet title, except in those cases in which it is permitted to establish a right between one person and many others claiming distinct and individual interests, is limited to cases in which a person in possession seeks relief against one who has repeatedly, and without success, sought to obtain possession by the common law action of ejectment. That action was simply a possessory action, and no question of title was settled by it, hence the necessity frequently for a suit to quiet title.

The action of trespass to try title, serves the purpose of an action of ejectment in this state, but in it the question of title as well as the right to the possession, is determined, and as fully settled as could it be by a suit to quiet title; hence, seldom, if ever, could a suit to quiet title, technically considered, be here necessary. The suits contemplated must be suits of broader purpose, embracing suits founded even on equitable titles instituted to remove cloud from such title, and suits necessary,

as occasion may require it, to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right.

It may be replied that it is a settled rule in equity that one will not be quieted in his title until he has established it at law. That is evidently the rule in equity in such suits technically considered. The rule, however, can have no application to this case, and in the district courts of this state, which in the same action may determine the right, be it legal or equitable, and give such relief as the nature of the case may require. The appellant does not claim to have the legal title to the land, but seeks to establish the superiority of the right held by him to that held by any other person. To determine whether his claim is well founded, an inquiry into the facts on which the respective parties base their claims must be made, and if found in his favor, the decree to be rendered, as to his adversary, would be a decree that he has the superior right to the land, followed by such orders as may be necessary to protect the right thus established against the assertion of the adverse claim in any other court, or in any of the departments of the government. Can litigation which may be followed by such results, under the letter or spirit of the statutes of this state, be carried on in a county other than that in which the land in controversy is situated, unless by consent of parties?

It may be said that one not in possession cannot maintain an action to remove cloud from title. This rule in equity is based on the general doctrine that a court of equity will not interpose and give relief where a party seeking its aid has a plain and adequate remedy at law. Under the laws of this state one in possession of land may have his action of trespass to try title against an adverse claimant, and in such case would any one doubt the ability of a district court, if it be found that the plaintiff, though in possession, has title, to enter just such a decree as a court of equity would enter in a case proper for the removal of cloud from title?

It is by no means unusual for such relief to be sought and given in actions of trespass to try title. Such relief could not be given in a court not having jurisdiction possessed by both courts of law and equity; but there is no hindrance in this state to the joinder of legal and equitable causes of action nor to granting relief in the same cause which, where the jurisdiction is not blended, could only be given by an action at law and a separate suit in equity. Pomeroy's Eq., 242, 253, 254, 258.

"When the estate or interest to be protected is equitable, the jurisdiction should be exercised whether the plaintiff is in or out of posses-

sion, for under these circumstances legal remedies are not possible."
Harral v. Gray, 10 Neb., 188; King v. Carpenter, 37 Mich., 366;
Branch v. Mitchell, 24 Ark., 439; Laurence v. Zimpleman, 37 Ark.,
645; Pomeroy's Eq., 1399.

This case illustrates both the necessity and propriety of this rule.
The surveyor declines to make the survey and return the field notes,
not upon the ground that the evidences of right presented by the
plaintiff are not sufficient to entitle him to have these things done, if
the averments of his petition are true, but upon the ground that there
is better right in another.   The law refuses to the applicant the ordi-
nary remedy to establish the superior right in a contest of title, while
recognizing a right in him, if what he asserts is true, but in one
respect inferior to that which, for remedial purposes, is equal to a legal
title evidenced by patent.   Before the surveyor can be compelled to
act, it is essential that the superior right of the plaintiff be established,
and this can be done only through some proceeding to which the ad-
verse party is a party, and in which the question of title may be passed
upon.

Were an action of trespass to try title brought against the adverse
claimant, on the evidences of right the plaintiff now has, it could
not be sustained, because he has not a survey or surveys.   If the
plaintiff brings an action to remove cloud from his title, or to quiet it,
by having an adjudication that the adverse claim has no validity, is
he to be met with the defense that he has not established a legal title,
or that he is not in possession, and therefore, not entitled to relief?   If
so, a right recognized by law may exist, and yet no remedy be allowed
for its enforcement.   The laws of this state are not subject to such a
reproach.

We are aware that in the case of Harrington v. Williams, (31 Tex.,
448,) it was declared that one out of possession could not maintain
a suit to remove cloud from title, but there was no consideration in
that case of the right of one out of possession who asserts an equitable
title.   One holding such a title could have no redress in a court of
law, whether in or out of possession; hence, the rule enforced in courts
of equity against one out of possession and holding a legal title can
have no application.

The result of this action would be binding upon the plaintiff and the
adverse claimant on the question of title.   If decided in favor of the
plaintiff, it would take from the surveyor all pretense of right longer
to refuse to do what the plaintiff has requested; and, thereon the proper
officers of the government would doubtless deem it their duty to issue
patents to the plaintiff, after surveys were made and returned, unless

some reason for not doing so, other than the adverse claim set up by the defendant corporation, was found to exist.

It has at all times been held that the title between adverse claimants should be settled in the county in which the land was situated, (Tabor v. Commissioner, 29 Tex., 521; Commissioner v. Smith, 5 Tex., 484), and an act of the legislature was deemed requisite when a *mandamus* was sought, in order to relieve the heads of the departments from being drawn to distant counties as parties to such actions. P. D., 1407; Commissioner v. Smith, 5 Tex., 485; Railway Company v. Randolph, 24 Tex., 343. That no such law has been passed in reference to county surveyors, is strongly persuasive that they are left subject to the general rule, which permits all persons to be made parties to a suit, who are necessary to a complete determination of the contested right or rights, and to the granting of the full relief which such right or rights may entitle the holder to.

Under this general rule, it is unimportant when the jurisdiction of the court is properly invoked at the place where the suit is brought, by reason of the subject-matter of the action, that some of the parties, necessary to full relief, may not be resident in the county in which the action is brought.

In an action for *mandamus* against a surveyor, brought in the county in which the land was situated, to compel him to make a survey, it was held that claimants of the land not resident in the county in which the action was brought should be made parties. Watkins v. Kerchain, 10 Tex., 375.

There would be no end to litigation if separate suits must be instituted against the surveyor if he be not a resident of the county in which the land be situated, and against claimants; the one where the land is situated and the other where the surveyor may reside. The judgment rendered against a claimant would not be conclusive against the surveyor if he be not a party to the suit in which it is rendered.

While in such a case the surveyor would not be permitted to assert as a reason why the writ should not issue, the claim adjudicated between the parties, he might set up any other claim whether well or ill-founded, and thus require another action to be brought against the alleged claimant in the county in which the land is situated.

Such a practice would but lead to a multitude of suits to determine what ought to be determined in one, to the delay of justice, vexation of litigants and detriment of the public; to a practice at war with the policy of the state, evidenced by the constitution as well as the statutes requiring the speedy return of all land claims to the general land office with surveys.

In Railway Company v. Locke, 63 Tex., 623, which was a suit brought to compel the surveyor of Bexar land district to make a survey of land within his district, but within Zavalla county, which was attached to Frio county for judicial purposes, there was no prayer for other relief than a writ of *mandamus*, and no pleadings on which such relief as is sought in this case could have been granted, and it was held that the district court for Bexar county had jurisdiction of the case, and that it was error to dismiss it upon the ground that the action should have been brought in Frio county.

It may be that too much weight was given in that case to the fact that no specific relief other than that which would be given though a writ of *mandamus* was directly sought. It is evident that the opinion proceeds·upon the theory that there was no jurisdictional question in the case, other than that which arose upon the prayer for the writ of *mandamus*, and we, therefore, cannot regard that case as an authority for the disposition of the present. The demurrer filed by the adverse claimant of the land was general, and we are of the opinion that the averments of the petition were sufficient to show that whatever claim the defendant corporation may at one time have had, was barred by the provisions of the constitution. Const., art. 14, sec. 2.

The exhibits attached to the plaintiff's petition showing what lands the defendant asserted title to, and when the certified copies of land certificates, and of certificates for unlocated balance certificates issued do not qualify or destroy the general averment that the claims were barred. This may be true, nothwithstanding every fact stated in the exhibits be true. If it was deemed necessary that there should be a statement in the plaintiff's pleadings, as to the date at which the original certificate in place of which the certified copies and unlocated balance certificates were given, were issued, that question should have been raised by a special exception. It would be as improper as unnecessary for us, as this case comes before us, to consider under what state of facts the defendant's right to hold the land in controversy would be barred, or to speculate upon the questions which may arise in the future progress of the case.

The court below erred in sustaining the demurrers to the petition, and its judgment will be reversed, and the cause remanded.

· It is so ordered.

REVERSED AND REMANDED.

[Opinion delivered June 4, 1886.]