**LOTT et al. v. VAN ZANDT et al.**

No. 4770.

Court of Civil Appeals of Texas. Amarillo.

June 14, 1937.

Rehearing Denied July 10, 1937.

Underwood & Strickland, Vinyard & Wright, and E. Byron Singleton, all of Amarillo, and J. R. Porter, of Clarendon, for appellants.

R. A. Wilson, Underwood, Johnson, Dooley & Huff, and W. M. Sutton, all of Amarillo, and Benson & Benson, Donald, Kearby & Donald, and J. W. Chancellor, all of Bowie, for appellees.

STOKES, Justice.

This suit was filed November 16, 1934, by O. W. Sage as receiver of the Security National Bank of Bowie against appellants, Hervey Lott, and his children, Vestal, Warren, Marjorie, Harold, and Bill Lott. C. R. Titsworth and his wife, Daisy Titsworth, intervened, and appellee, R. L. Van Zandt, who succeeded Sage as receiver, was substituted as plaintiff and the suit proceeded in his name. It was a suit in trespass to try title, the first count being in the ordinary form of that character of action, and the second count setting out in detail the various conveyances pertaining to a section of land in Yoakum county, constituting the chain of title up to and including the conveyance to the appellant, Hervey Lott, and a continuous chain of title from M. L. Kelly, Jr., to the Security National Bank of Bowie.

Plaintiff alleged that on or about the 1st of May, 1924, Hervey Lott executed and delivered to M. L. Kelly, Jr., a deed, conveying the land to Kelly, but that Kelly failed to file the same for record or to have it recorded in the deed records of Yoakum county, and that the deed is now lost and its whereabouts unknown. He alleged that Kelly became vested with all the title to the land by virtue of the lost deed and prayed for title, possession, and restitution of the land and for judgment removing any and all clouds cast upon the same by the claims or assertions of the appellants, and that the title be adjudged to and vested in the appellee as receiver, and for costs of suit.

The interveners adopted the pleadings of the plaintiffs.

By an amended answer appellants pleaded that the action sought to be maintained was not an action to recover land, but was a suit to establish a lost deed, and pleaded the statute of four years' limitation in bar of same, in addition to the general issue of not guilty.

The trial was before a jury and the case was submitted upon special issues, in answer to which the jury found, in substance, that Lott executed and delivered a deed of conveyance to M. L. Kelly, Jr., on or about May 1, 1924; that in reply to a letter from Titsworth on or about September 17, 1926, inquiring of Lott if he had sold the land to Kelly, Lott wrote in red pencil on the letter of Titsworth, the following words: "Yes, I sold it to Kelly. H. Lott." That Titsworth relied on the notation in red pencil and paid delinquent interest to the state, it being school land, and that Titsworth and the bank relied upon such notation when they paid subsequent installments of interest. Upon these findings the court rendered judgment in favor of plaintiff and interveners against all of the defendants for the title and possession of the land, quieting the same in the plaintiff and interveners, removing the cloud cast thereon by the claim of the defendants, and vesting the title accordingly.

The principal contention of appellants is made under their third, fourth, and fifth propositions, in which they take the position that the alleged lost deed, being an obstacle to recovery, it was necessary, first, to establish it before an action to recover the land would lie, and that an action to restore a lost deed, being a personal action and an equitable proceeding, is barred by the statute of four years' limitation under article 5529, Revised Civil Statutes. If appellants' contention is correct, then appellees were not entitled to recover under their suit in trespass to try title, because, in establishing their title, if, when they arrived at the link in the chain that could be established in no other way than through the lost deed, it became necessary to stop and indulge in an equitable proceeding for that purpose and actually procure a decree of the court establishing such lost deed, and an action for that purpose was barred by limitation, such ancillary action would necessarily fall and appellees would not be permitted to further proceed with their suit in trespass to try title, because

more than four years had elapsed after appellees knew the deed was lost and before the suit was filed. In support of their contention in this respect appellants cite and rely upon the case of Deaton et ux. v. Rush, et al., 113 Tex. 176, 252 S.W. 1025, 1031, by the Commission of Appeals, and other cases of the same import. That decision was made upon a certified question in a suit that had been filed in Stephens county by Deaton and wife against J. M. Rush and the Magnolia Petroleum Company to cancel a conveyance of two tracts of land alleged to have been conveyed to Rush in exchange for land in the Republic of Mexico, on the ground that the exchange had been procured by means of false and fraudulent representations made by Rush. In answer to one of the questions propounded by the Court of Civil Appeals, the Supreme Court said: "In answer to question No. 4 we have held that no suit for the recovery of the land could have been maintained before the cancellation of the deed. Until such cancellation there could be no such 'mature right to recover the land as might have been declared upon and maintained subject only to such valid defenses by which it might have been defeated.' The deed to Rush itself was a complete answer to any suit for the recovery of the land, irrespective of its voidability, until its power for that purpose had been destroyed by the inquiry into and establishment of the rights of Mrs. Deaton arising out of the fraud by which the deed was obtained. Therefore her cause of action for the recovery of the land in the legal import of that term, did not accrue 'before the cancellation as title of her deed to Rush.'"

To the same substantial effect is the case of Thomson v. Locke, 66 Tex. 386, 1 S.W. 112; McCampbell v. Durst, 15 Tex.Civ. App. 522, 40 S.W. 315, 320; Martin v. Burr, 111 Tex. 57, 228 S.W. 543; Miller v. Rusk, 17 Tex. 170, 171; Hearst's Heirs v. Kuykendall's Heirs, 16 Tex. 327, 329.

 Under the doctrine announced by the courts in the above and a number of other cases, it is apparent that one who holds the title to land which is sufficient to enable him to proceed directly in a suit for its recovery may join with such a suit a personal action for incidental relief and clear away any objects that appear to disturb or cloud his title. It is further held that the fact that such an incidental feature is added does not destroy the nature of a suit for the recovery of land. On the other hand, it is well established that one may file a suit for the principal purpose of destroying an impediment to his title, such as the cancellation of a deed for fraud or other legal ground, and, as an incident thereto, join with it a suit for the recovery of the land itself. In a suit for the recovery of land it is necessary that the plaintiff, in order to recover, possess a title sufficient to enable him to bring the suit directly for the recovery of the land. In trespass to try title, if he prevail, it is essential that the plaintiff establish his claim. It matters not whether his claim rests in law or equity; but he must establish it. If, therefore, he files such a suit and his proof establishes the fact that the title rests in some other person, it then becomes necessary for the plaintiff to stop and destroy the impediment. If he has theretofore executed a deed which was procured from him through fraudulent representations and it becomes necessary for him to rid his chain of such deed, manifestly he can do so only through a decree of the court in which he establishes the fraud and thus destroy the deed. The reason for this is that the title is not in him to that extent where he can maintain a suit for its recovery. He may have an equity in his right to cancel the deed which entitles him to a decree, which would give him title to the land, but until he procures such a decree he would not be in position to ask the court to invest him with title. It is said in the case of McCampbell v. Durst, supra: "The holder of such an equity may sue to obtain a decree enforcing it, and under our system, may, in the same suit, obtain judgment for the land, as the consequence of the establishment of his equity; * * * but, unless he is entitled to the former decree, he cannot obtain the latter. This principle underlies the decision in Thomson v. Locke, supra, where it is said: 'The appellant does not claim to have the legal title to the land, but seeks to establish the superiority of the right held by him to that of any other person. To determine whether his claim is well founded, an inquiry into the facts, on which the parties base their respective claims, must be made, and, if found in his favor, the decree to be rendered as to his adversary would be a decree that he has the superior right to the land, followed by such orders as may be necessary to protect the right thus established against the assertion of the adverse claim in any other court or in any of the departments

of government.'" We interpret these holdings to mean that, in order to maintain a suit in trespass to try title, the plaintiff must be in position to show title in himself and, inasmuch as a voidable deed is effective as a conveyance until set aside for the causes which make it voidable, it stands as an effective conveyance, and, until so set aside, will defeat a suit in trespass to try title. A suit of that nature, being a personal action, and there being no other specific article of the statute providing for its limitation, it necessarily comes under article 5529, R.C.S., which bars all such actions within four years. Deaton v. Rush, supra, and authorities there cited.

■ If appellees in this case were under the same obligations to establish the alleged lost deed before proceeding with their suit in trespass to try title as is the plaintiff in a suit, in which it becomes necessary to cancel a deed procured through fraud, then unquestionably appellant is correct in his contention that the suit of appellee in this case is primarily one to establish a lost deed, and, incidentally, to recover the land, and, as such a suit is barred under the four years' statute of limitation, appellees could not recover in this case. We do not think, however, that the same rule of law governs in the two characters of suits. Under the law a deed of conveyance is not made ineffective by its destruction or loss. It is said by Justice Wheeler in the case of Van Hook v. Simmons, 25 Tex.Supp. 323, 324, 78 Am.Dec. 573: "If the grantee of land alter or destroy his title deed, yet (it is said) his title to the land is not gone. It passed to him by the deed; the deed has performed its office as an instrument of conveyance; and its continued existence is not necessary to the continuance of title in the grantee, but the estate remains in him until it has passed to another by some mode of conveyance recognized by law."

Certainly if the physical destruction of a deed does not have the effect of destroying the grantee's title, its loss would not have that effect.

In the case of Shepard v. Cummings' Heirs, 44 Tex. 502, the plaintiff alleged that he owned the land under and by virtue of a deed from Samuel Cummings to his son, James Cummings, and a deed from James Cummings to himself, which deeds were executed and delivered in 1840, but that said deeds were lost and destroyed. The court held it was a suit to recover land, although there was no indorsement on the petition that the action was brought as well to try title as for damages, it being manifest that the suit, in its most important features, was an action to try title. In passing upon the question of lost deeds, the court said: "If he [appellant] acquires a legal title by the deeds, their loss or destruction does not change the character of such title. And should he have to bring suit to recover the land so conveyed, and can on the trial excuse himself from the production of the deeds, and otherwise satisfactorily establish their due execution and contents, he would be as clearly entitled to a judgment as if the deeds were still in existence and before the court." The decision goes on to hold that if the suit had been of a personal nature to establish the contents and execution of the deeds for the purpose of perpetuating the evidence of title furnished by them, and there had been an unreasonable delay in bringing the suit after the loss or destruction of the deeds, it would have been a stale demand, which was the only relief in the nature of limitation prior to the enactment of our statutes on that subject.

■ It is our conclusion that in a case of this nature, where it becomes necessary to destroy the effect of a deed, whether based upon its procurement through fraud or upon other allegations which, if true, would make it voidable, in order to establish his title, the litigation partakes of the nature of a personal action for the cancellation of the deed or other instrument. This is made necessary because the plaintiff is not possessed of the title and cannot, therefore, proceed in a suit for the land because he is not able to establish title in himself until the voidable instrument is canceled or destroyed by proper decree of the court. On the other hand, it is our opinion, that where the deed is void ab initio, or a muniment of title necessary to complete his chain has become lost or misplaced, the suit is still one for the recovery of land and it is not necessary to halt the proceedings for that purpose and prosecute a suit for the establishment of the lost instrument. The reason for this is the fact that the title has not, by the void or lost instrument, passed out of the plaintiff, but the establishment of the fact of its loss or the facts that make it void becomes only an incident in establishing the chain of title necessary for the recovery of the land, and these may be establish-

766

ed by parol evidence in a suit to recover the land. These assignments are therefore overruled.

■ The next contention of appellants is that the testimony having shown, without dispute, that, if a deed had been executed by Hervey Lott to Kelly, it was the outgrowth of negotiations had by them about the time of the alleged execution of the deed under which Kelly was to execute a vendor's lien note to Lott in the sum of $2,000 as part of the purchase price and that, by the establishment of the deed, appellees necessarily established the vendor's lien, carrying with it the superior title and which established the superior title in Hervey Lott, and that, therefore, appellees could not recover in trespass to try title. This contention is based upon the testimony of Hervey Lott to the effect that, about May 1, 1924, he and Kelly were on a trade which contemplated the sale to Kelly of the land in controversy and the conveyance by Kelly to Lott of a warehouse in Clarendon, and also the execution of a note in the sum of $2,000, secured by a vendor's lien on the land. It was not established in the testimony that the note was executed. Lott testified that the deal between him and Kelly was never consummated and that the note was not executed. The jury found that Lott had executed a deed to Kelly, and we think the evidence was sufficient to sustain such finding. Whether such deed was a consummation of the negotiations testified to by Lott, or some other negotiations between them, is not shown by the evidence, and we do not think the record warrants the conclusion that, if a deed was executed, it was necessarily executed in consummation of the negotiations testified to by Lott. It was shown that Lott had paid the taxes and the interest to the state from the time he purchased the land in 1908 until about the year 1924, but that he paid none after that date. It was further shown that he had leased the land for grazing and collected the rentals thereon prior to 1924, but he did not collect any thereafter or make any effort to do so. It was further shown that at the time the deed was prepared by which Kelly sold the land to B. F. Davis, about May 12, 1924, the draftsman had before him a deed signed by H. Lott, conveying the land to Kelly, and used it in procuring the description of the land. Other witnesses testified that at a later date, Lott told them he had executed a deed, and on September 17, 1926, Titsworth wrote a letter to Lott, inquiring as to whether or not he had sold the land to Kelly, and, within a short time thereafter, he received through the mail the same letter with the notation in red pencil across it, "Yes, I sold it to Kelly." This notation was signed "H. Lott," and the jury found that appellant, Hervey Lott, wrote and signed the notation. Thus it will be seen the testimony was amply sufficient to support the verdict of the jury to the effect that appellant, Hervey Lott, executed the deed as alleged by appellee, and, as there was no testimony to the effect that a vendor's lien note was executed as part of the consideration for the conveyance, we cannot agree with appellants in this contention.

■ The law indulges no presumption that a deed shown to have been lost contained reservations of superior title or vendor's lien. Where a deed is shown to have been lost, it will be presumed, however, in the absence of evidence to the contrary, that it was sufficient to convey the land and that all formalities necessary for its proper execution were observed. Laird v. Murray (Tex.Civ.App.) 111 S.W. 780. Appellants' sixth and seventh propositions will, therefore, be overruled.

■ The eighth and ninth propositions complain of the action of the court in sustaining special exceptions to appellants' answer wherein they sought to excuse themselves for failure to pay interest and taxes on the land in controversy on the ground of the general financial depression and their particular financial distress. The record shows no action of the court on these exceptions, and in the absence of a showing that the trial court ruled thereon adversely to appellants, these propositions cannot be considered.

■ The tenth proposition complains of the testimony of the witnesses, Wade and Chancellor, which was admitted by the court over appellants' objections. The substance of their testimony was that Hervey Lott, in conversation with Chancellor, stated to Chancellor that he had already executed one deed to the land and if he executed another to take the place of the lost deed, he would have to have some money for it, and that he would execute it for $50. The objection went to the testimony as a whole on the ground that it showed an effort to compromise and was not admissible against the appellants other than Lott. Viewed in the light most favorable to appellants, the most that can be said is that the offer

to make another deed for $50, if in a spirit of compromise, was not admissible. We cannot say it was offered in that spirit, however, because Lott, himself, testified that he had, at a date different from the date testified to by Chancellor, offered to execute another deed for $500, and that he stated to Chancellor that his reason for being willing to do so was that he needed the money. It thus became a question as to whether it was an offer of compromise or not. Be this as it may, the balance of Chancellor's testimony concerning the conversation was admissible as contradicting Lott's testimony to the effect that he had never executed a deed to the land, and the objection being to the whole of the testimony, part of which was admissible, it was properly overruled. Williams v. Fuerstenberg (Tex.Civ.App.) 12 S.W.(2d) 812, 813.

Appellants' eleventh proposition raises the question of the sufficiency of the evidence to warrant the jury in finding that a deed had been executed by Lott to Kelly. We cannot agree with appellants in this contention. In addition to the testimony we have quoted above, it was shown that Lott was made a party defendant and served with citation in a case filed against him and others in Donley county on the 11th of January, 1928, by C. R. Titsworth upon a note executed by B. F. Davis to M. L. Kelly, Jr., and to foreclose a lien on the land in controversy. In that suit it was alleged by the plaintiff that Lott had owned the land and had sold and conveyed it to M. L. Kelly, Jr., prior to the date of the note, and that the deed had become lost or misplaced, which cast a cloud upon the title then held by Titsworth. Lott filed no answer in that case, which was dismissed before it was tried. It was further shown, without objection, that Kelly, during his lifetime, told Titsworth the deed from Lott to Kelly was in the Donley County State Bank.

■ By their twelfth proposition, appellants contend that the trial court should have granted their request to give to the jury in the charge a definition of the word "delivered" as used in the first special issue submitted to them in which the jury was asked if they found from the evidence that the defendant, H. Lott, executed and delivered a deed of conveyance to M. L. Kelly, Jr. There was no issue made on the particular question of delivery of the deed. The controversy was over the execution of the deed. Appellees claimed it had been executed and Lott denied it. No witness testified, nor did appellants claim a deed had been executed but had not been delivered. No request was made by appellants that the question of the delivery of the deed be submitted in a separate special issue, and we think the record warrants the conclusion that the question of delivery as distinguished from execution was not contended for in the trial, and constituted no part of the real controversy between the parties.

■ Under the thirteenth proposition appellants contend that the actual physical testimony before the court showed that appellant Lott did not write the notation in red pencil on the letter written to him by Titsworth, and that the affirmative answer of the jury to that special issue is in conflict with the evidence, and that appellants' motion for new trial should have been sustained. The witness, W. E. Benson, testified that he had custody of the letter from soon after it was written until the trial of the case. The witness, E. B. Hedrick, qualified as an expert in handwriting, and after making a number of comparisons of the notation on the letter and other documents admittedly written and signed by Lott, testified that, in his opinion, the notation was written by the same person who wrote and signed the other documents. He pointed out certain characters in the various documents which he said were similar. Titsworth testified he had known Lott for several years and that he wrote the letter and mailed it to Lott's address at Amarillo, and that within a few days he received through the mail a reply, which consisted of a return of the letter he had written, with the notation written diagonally across it. Lott testified he did not write the notation, and another witness testified, after qualifying as a handwriting expert, that in his opinion it was not in the handwriting of Hervey Lott. Thus the question was made an issue and was strongly controverted. This made it a proper question for the jury, and the trial court was not warranted in setting aside their verdict upon a motion for a new trial, nor is this court warranted in disturbing it.

■ Under their fourteenth, fifteenth, sixteenth, and seventeenth propositions, appellants claim their motion for a new trial should have been granted upon the ground of misconduct of the jury. When the motion was presented, E. P. Stanford, one

of the jurors, was sworn and testified in substance that after the jury retired to consider their verdict, they were "trying to determine as a set of jurors who in our opinion was entitled to it." No explanation was made by the juror as to what he meant by the statement, and he was not asked for such an explanation. He testified on cross-examination that what they were really doing was to try to find an honest answer to the questions the court had asked. We do not think misconduct is shown in this testimony. There is no showing that the jury agreed to render a verdict in favor of either party to the suit and then framed the answers to the special issues to insure that result, nor any other showing that we can construe as misconduct, and these propositions are, therefore, overruled.

We have considered all of appellants' propositions and find no reversible error in the record. The judgment is, therefore, affirmed.