

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable O. P. Lockhart, Chairman
Board of Insurance Commissioners
Austin, Texas

Dear Sir:
Opinion No. 0-3924
Re: Investments of a general
casualty insurance company.

This department has received your request for an opinion. We set out below the pertinent part of your letter and the enclosures contained therein.

"Please advise if a general casualty insurance company such as the Employers Casualty Company of Dallas, Texas, operating under the provisions of Chapter 18, Title 78 of the Revised Civil Statutes of Texas, and governed in its investment policy by Articles 4705-6, and 4993, may make the lessor a loan and accept as securing therefor a mortgage note on the lessor's interest under the lease and assignment of rentals due, under what the Federal Housing Act designates as Class 3 loans."

The enclosure reads as follows:

"As you know the power of this company to invest funds constituting a part of its capital and surplus is regulated by the provisions of Arts. 4705, 4706 and 4993 of the Texas Statutes as amended. All three of these articles, as now amended, authorize investments in first mortgages or liens upon real estate under certain expressed conditions.

"Under Title 1 of the Federal Housing Act (Sections 1702-1705 U S C A), the Federal Housing Administrator is insuring what is known as Class 3 loans. Such a loan is made to the lessee of unimproved real estate under a form of lease prescribed by the FHA.

Such lease is for a term of not less than 31 years, provides for an annual rental of so much per year payable to the owner of the property and provides that the lessee shall have the option of purchasing the property at any time for a given sum. The option price is the fair value of the unimproved property as determined by the FHA, and the annual rental is fixed on a basis to yield the lessor a 6% return on that valuation. The lease also provides that if the lessee defaults in the payment of the annual rental, or fails to perform any of the other covenents contained in the lease, and fails to cure the default within 90 days, the lease will terminate and the lessor can re-enter and take possession of the lot, together with all improvements which have been erected thereon by the lessee.

"The lessee in turn borrows a sufficient sum of money for the purpose of erecting improvements on the property, and to secure the loan, executes to the lender a mortgage on the leasehold estate as well as all other rights acquired by him under the lease. The form of this mortgage or deed of trust is prescribed by the FHA, and among other things, it provides that the mortgagee will collect the ground rental from the lessee and pay it to the lessor, and that in the event the lessee fails to pay the rental, the mortgagee may do so and the amount so advanced by the mortgagee will be secured by mortgage. Loans of this type secured by a mortgage on the leasehold estate qualify for insurance under Title 1 of the Federal Housing Act, where not in excess of $2500.00.

"Under the foregoing arrangement the lessor still holds title to the premises, subject, of course, to the lease and the option to purchase therein contained. When improvements have been erected on the premises, the lessor's security is not only the lot, but also the improvements paid for by the FHA loan. Under FHA requirements the value of the lot as fixed in the option to purchase price will not exceed approximately 25% of the total value of the lot and improvements.

"The question in which we are interested is whether or not the lessor under the above mentioned arrangement, following the completion of the improve-

ments erected on the lot and the closing of the
FHA loan to the lessee, has an interest in the prop-
erty of such character that our company could make
the lessor a loan, and accept as security therefor a
mortgage on the lessor's interest under the lease
and an assignment of the rental due thereunder. This
company has had submitted to it several requests for
loans of this type, but before acting upon such re-
quests, we think it necessary to obtain through you
an opinion of the Attorney General on the question of
whether or not such loans are of a type in which this
company may legally invest its funds. In the case of
each of these loans the amount of money which the
lessor desires to borrow is the total value of the
unimproved lot, this being the value of the lot fixed
by FHA and stated in the lease as the option to pur-
chase price. Thus should the loan be made we would
be lending 100% of the value which the property had
prior to the time the improvements were erected by
the lessee. However, as above stated, at the date the
lessor has come to us with his request for a loan the
improvements erected by the lessee have enhanced the
value of the property to such an extent that its mar-
ket value is considerably more than 40% above the a-
mount of the requested loan, which is the requirement
set out in Arts. 4705, 4706 and 4993. Furthermore,
the lessor's interest in the property which would be
mortgaged to us is 'unincumbered,' unless the FHA
mortgage covering the lessee's interest can be con-
sidered as an incumberance against the lessor's in-
terest."

Articles 4705, 4706 and 4993, Vernon's Annotated Civil
Statutes, govern the investments of a general casualty insurance
company. Only certain sections of those articles are applicable
to our situation here. They follow:

Article 4705. "The capital stock of any such
insurance company, except any writing Life, Health
and Accident Insurance, shall consist:

" * * *

"3. In first mortgages upon unencumbered real
estate in this State * * *."

Article 4706. "No company, except any writing Life, Health and Accident Insurance, organized under the provisions of this Chapter shall invest its funds over and above its paid-up capital stock in any other manner than as follows:

"(b) In bonds or first liens or unencumbered real estate * * *."

Article 4993 prescribes the amount of capital stock that general casualty companies must have and then adds as follows:

(That) "Capital shall be paid up or invested in * * * bonds or first liens upon unencumbered real estate * * *."

The consistent use of the phrase "unencumbered real estate" by the framers of the various enactments is to be readily noted.

The Supreme Court of Texas in the case of Turner v. Ross, 83 Tex. 218, 18 S. W. 578, 15 L.R.A. 262, ably announced what is now a well known rule of statutory construction, to-wit:

"It is the duty of a court to give to language used in a statute the meaning with which it was used by the Legislature, if that can be ascertained; and to do this, if the words used be not such as have a peculiar meaning when applied to an art or trade with reference to which they are used in the statute, they should be given their ordinary meaning, as the Legislature must be presumed to have used them in that sense in which they are ordinarily understood." See also T. & P. RR Co. v. Railroad Commission of Texas, 150 S.W. 878, 105 Texas 386.

In the case of Thomson v. Locke, 1 S. W. 112, 66 Texas 383, the Supreme Court of Texas adopted the following definition of the word "incumbrance" or "encumbrance:"

"In a legal sense the word 'incumbrance' means an estate, interest or right in lands, diminishing their value to the general owner, a paramount right in or weight upon land which may lessen its value."

Honorable O. P. Lockhart, Chairman, Page 5


Tiffany in his treatise on Real Property defines an encumbrance as "every right to or interest in the land which may subsist in third persons, to the diminution of the value of the land." Also:

"Any right existing in another to use the land, or whereby the use of the owner is restricted, is an incumbrance within the legal meaning of the word." Bull v. Burton, 124 N.E. 124, 227 N.Y. 101.

In the situation before us, the lessee has a lease for years and an option to purchase the lessor's interest in the property at any time. Further, in entering into the agreement the parties bind their respective heirs, executors, administrators, successors and assigns.

It is our opinion that the single fact that an estate or lease for years outstanding in a third person is weighted against the lessor's interest in the land constitutes such an encumbrance within the meaning of the term and contrary to the provisions of the statutes as to prevent the insurance company from investing its funds in the lessor's interest in the property. Furthermore, we think the lessee's option to purchase is itself an encumbrance within the meaning of the rules above discussed. Thus we advise you.

We trust that this answers your question.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

William J. Fanning
Assistant

By
Grundy Williams

APPROVED OCT 6, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

GW:ej


APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN