TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-99-00702-CV







Robert D. Babcock, Appellant


v.



Billy J. Brickell and Frankie S. Brickell, Appellees








FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT


NO. 165,496-C, HONORABLE OLIVER KELLEY, JUDGE PRESIDING








 Robert Babcock sued Billy and Frankie Brickell to quiet title to a tract of land in
Bell County. The Brickells filed a counterclaim seeking the same equitable relief. After a bench
trial, the trial court rendered judgment in favor of the Brickells. We will affirm the trial court
judgment.


FACTUAL BACKGROUND


 In September 1960, W.B. Denman and his wife, Nora Lee Denman, conveyed to
J.E. Kutscher and Harry Dulick various tracts of land in Denman's Twin Mountain subdivision,
including Lot 3 in Block Number 31 of the Number 5 Addition. The parties have stipulated that
the September 1960 deed is the common source of title.

 On February 18, 1961, Continental Resort Company, a partnership owned by
Kutscher and Dulick, entered into a contract for deed with H.O. and Ethel Veal by which the
Veals agreed to purchase Lot 3 from Continental for $956. The contract required the Veals to pay
$58 down and finance the remaining $898 through monthly installments of $15. Dulick testified
that the monthly installments were credited to the principal and that interest and taxes were to be
paid at the end of the contract. 

 The Veals stopped making payments in January 1967, leaving an unpaid principal
balance of $223. Dulick testified that Continental sent the Veals a letter in June 1967 notifying
them that they were behind in their payments and that the contract would be canceled if the unpaid
balance was not received within a few days. He testified that the Veals never responded to the
letter and that "[w]e canceled them out for non payment, as per terms of the contract." (1) It is
undisputed that the contract for deed was never recorded. (2)

 On September 20, 1995, Dulick and Kutscher's widow Martha conveyed a lot to
appellant Babcock for $2500. The deed as typed referred to Lot 5, but after the deed was
executed and delivered to Babcock, the legal description was changed from Lot 5 to Lot 3. 
Babcock initialed the change, but the altered deed was not re-executed or redelivered to Babcock
by the grantors. Babcock recorded the deed in October 1995.

 Inez Roe, guardian of the estate of Ethel Veal, conveyed Lot 3 to herself in an
instrument filed for record on February 16, 1993. Roe and her two brothers, Harold and Donny
Veal, conveyed Lot 3 to the Brickells by two warranty deeds filed for record on February 9,
1996. 

 By a warranty deed filed for record on April 10, 1996, Dulick and Martha Kutscher
conveyed Lot 3 to H.O. and Ethel Veal for consideration of "ten dollars and other good and
valuable considerations." Billy Brickell testified that he "hired an attorney that obtained this deed
for me." At the top of the first page of the deed appears the notation "DUPLICATE DEED __
ORIGINAL 12.17, 1965." Dulick testified that he made a mistake by signing the deed because
the 1961 contract for deed with the Veals had been canceled, and no prior deed conveying Lot 3
to the Veals had ever been issued.

 In the spring of 1996, the Brickells informed Babcock that they owned Lot 3. Both
parties sought equitable relief. After a one-day bench trial, the trial court ruled in favor of the
Brickells. In its conclusions of law, the court stated, "The alteration of Plaintiff's deed after the
execution and delivery of the deed is of no effect and the instrument stands as originally drawn. 
As such, Plaintiff's deed is not a deed to Lot 3; rather, it is a deed to Lot 5." On appeal, Babcock
seeks a reversal of the trial court judgment and a rendition of judgment in his favor.


DISCUSSION


 The principal issue in a suit to quiet title is whether a cloud on title exists that
equity will recognize and remove. See 47 Tex. Jur.3d Quieting Title and Determining Adverse
Claims § 29 (1988). The action lies "to enable the holder of the feeblest equity to remove from
his way to legal title any unlawful hindrance having the appearance of a better right." Bell v. Ott,
606 S.W.2d 942, 952 (Tex. Civ. App.--Waco 1980, writ ref'd n.r.e.) (quoting Thomson v. Locke,
1 S.W. 112, 115 (Tex. 1886)). Any deed, contract, or judgment or other instrument not void on
its face that purports to convey any interest in or make any charge upon the land of a true owner,
the invalidity of which would require proof, is a cloud upon the legal title of the owner. See Fry
v. Guillote, 577 S.W.2d 346, 352 (Tex. Civ. App.--Houston [14th Dist.] 1979, writ ref'd n.r.e.)
(citing Best Inv. Co. v. Parkhill, 429 S.W.2d 531, 534 (Tex. Civ. App.--Corpus Christi 1968, writ
dism'd w.o.j.)).

 The plaintiff in a suit to quiet title must allege right, title, or ownership in himself
with sufficient certainty to enable the court to see he has a right of ownership that will warrant
judicial interference. See Ellison v. Butler, 443 S.W.2d 886, 888-89 (Tex. Civ. App.--Corpus
Christi 1969, no writ). While ordinarily in a suit to quiet title to land the plaintiff must recover
on the strength of his own title and not on the weakness of that of his adversary, such a rule is
inapplicable where the parties trace their titles to a common source. See 65 Am. Jur.2d Quieting
Title § 44 (1972). In such a case, the plaintiff need only show a title good as against the
defendant. See id. Because the parties have stipulated to a common source of title, to reverse the
judgment of the trial court, we must conclude that Babcock proved his title was superior to that
of the Brickells.

 At trial, Babcock had the burden of showing he had title to Lot 3. Babcock
introduced a warranty deed that purported to convey Lot 3 to him in September 1995. The deed
was recorded in October 1995. Because Babcock thus established prima facie title, the burden
shifted to the Brickells to establish a title to defeat Babcock's claim of ownership.

 The Brickells attempted to accomplish this in two ways. First, the Brickells
attacked the validity of Babcock's deed, arguing that because Babcock's alteration of the lot
designation on the deed was of no effect, the deed actually gave him title to Lot 5, not Lot 3. 
Next, they traced a chain of title through the Veals. The Brickells presented a deed by which Inez
Roe, as guardian of Ethel Veal's estate, conveyed Lot 3 to herself in 1993, as well as two deeds
by which Roe and her brothers, Harold and Don, conveyed Lot 3 to the Brickells in February
1996. The two deeds were recorded on February 9, 1996. The court also admitted a deed
recorded on April 10, 1996, by which Dulick and Martha Kutscher conveyed Lot 3 to H.O. and
Ethel Veal. On the April 1996 deed appeared a notation indicating that it was a duplicate of an
original deed that conveyed the property to the Veals on December 17, 1965. 

 We note initially that although the Brickells carried their burden of establishing that
they were bona fide purchasers for value of Lot 3, they failed to produce a deed recorded prior
to October 1995; thus, any claim of superior title by the Brickells must necessarily rely upon the
argument that Babcock's alteration of his deed was of no effect and that the instrument stands as
originally drawn. Babcock argues that there was no evidence on which the trial court could have
based its findings that he altered his deed after it was executed and delivered or that at the time
of the execution of the deed, there existed a tract of land designated as Lot 5, Block Number 31,
Denman's Twin Mountain Number 5 Addition. 

 The familiar appellate rule that all presumptions are in favor of the trial court's
findings applies as well to a suit to quiet title. See 47 Tex. Jur.3d Quieting Title and Determining
Adverse Claims § 36; Alkas v. United Sav. Assoc., 672 S.W.2d 852, 857 (Tex. App.--Corpus
Christi 1984, writ ref'd n.r.e.). In reviewing a no-evidence challenge, we consider all the
evidence in the light most favorable to the prevailing party, indulging every reasonable inference
in that party's favor. See Associated Indem. Corp. v. CAT Contracting, 964 S.W.2d 276, 285-86
(Tex. 1998). We will uphold the finding if more than a scintilla of evidence supports it. See
Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995). The evidence supporting
a finding amounts to more than a scintilla if reasonable minds could arrive at the finding given
the facts proved in the particular case. See Crye, 907 S.W.2d at 499; Transportation Ins. Co. v.
Moriel, 879 S.W.2d 10, 25 (Tex. 1994).

 In a nonjury case, the trial judge is the trier of fact, and it is his duty to decide
issues of fact on the evidence. See Alkas, 672 S.W.2d at 856. The trial judge is not bound to
adopt a party's contention as to the weight of the evidence; it is the court's right and duty to weigh
the evidence and draw reasonable inferences and reasonable deductions therefrom. See id. The
court also had the duty to determine the credibility of the witnesses and the weight to be given
their testimony in exactly the same manner as a jury would have done. See id. 

 At trial, Babcock was the only witness to testify concerning the alteration of the
September 1995 deed. The deed was signed by Dulick and Martha Kutscher on September 26,
1995 before a notary in Harris County. The deed as typed referred to the conveyance of Lot 5. 
On cross-examination, Babcock testified that he never saw the deed before it was signed by Dulick
and Kutscher and that he was not present at the signing. Babcock also testified he initialed the
change of the lot designation from Lot 5 to Lot 3 after Dulick and Kutscher signed the deed.

 We conclude that there is more than a scintilla of evidence to support the trial
court's finding that Babcock altered his deed after execution and delivery of the deed by the
grantors. Although Babcock did not directly testify to altering the document himself, the trial
court had before it evidence from which it could reasonably draw that inference. In any event,
the evidence supports the finding that the deed was altered after execution, and Babcock does not
challenge on appeal the trial court's finding that "Plaintiff's deed was never re-executed or
redelivered to Plaintiff by Grantors after the date Plaintiff altered the lot designation." (3) 
Therefore, the trial court's conclusion that the instrument stands as originally drawn cannot be
disturbed. See Stockton v. Lake Tanglewood & Skybolt, Inc., 441 S.W.2d 575, 577-78 (Tex. Civ.
App.--Amarillo 1969, no writ).

 With regard to Babcock's no-evidence challenge to the trial court's finding that
"[a]t the time of the execution of Plaintiff's deed, there existed a tract of land designated 'Lot 5,
Block 31 Denman's Twin Mountain, plat of said subdivision on file in the County Clerk's Office
Bell County, Texas 5,'" we again conclude there is sufficient evidence to uphold the finding. 
Babcock testified to the existence of Lots 2, 3, and 4 in Block 31 of the Number 5 Addition. 
Babcock further testified that he owned "five or six" lots in the addition. Brickell testified to the
existence of Lots 1, 2, 3, and 13. From this testimony, the trial court could have reasonably
inferred that a Lot 5 existed at the time of the execution of Babcock's deed. Moreover, even if
there did not exist a Lot 5 at the time of the deed's execution, Babcock's deed was never re-executed after the alteration and thus Babcock still would not have possessed record title to Lot
3.

 Having concluded that Babcock does not have record title to Lot 3, we must
determine whether the Brickells as defendants have established their right to have title quieted in
themselves. See Messer v. Johnson, 422 S.W.2d 908, 912 (Tex. 1968) (defendant who files cross
action to quiet title in himself may secure such relief). As a claimant, a defendant must show an
interest of some kind, but it is incorrect to say he must show fee simple or uncontestable interest
to prevail in a suit to remove cloud on title or to quiet title. See Katz v. Rodriguez, 563 S.W.2d
627, 630 (Tex. Civ. App.--Corpus Christi 1977, writ ref'd n.r.e.). We conclude from the
evidence in the record that while the Brickells did not establish fee simple or uncontestable title,
they did establish title derived from the common source superior to that claimed by Babcock. We
therefore affirm the judgment of the trial court.



 
 

 Jan P. Patterson, Justice

Before Justices Jones, Yeakel and Patterson

Affirmed

Filed: June 15, 2000

Do Not Publish
1. Dulick testified that decisions to terminate contracts for deed were ordinarily made by
a secretary without consulting him or J.E. Kutscher; therefore, a termination letter would not have
contained his signature. Dulick further testified that although he was unable to find in
Continental's records a copy of the termination letter sent to the Veals, he was "ninety-nine
percent" certain, based on notes in Continental's ledger book, that such a letter was sent. 
2. Continental also entered into a contract for deed with the Veals for the purchase of Lot
2 in Denman'
s Twin Mountain. The Veals paid for Lot 2 in full, and Continental conveyed the
lot to the Veals by virtue of a warranty deed signed on December 6, 1965 and filed for record on
August 29, 1995.
3. Babcock also challenges the trial court's exclusion of testimony concerning the grantor's
secretary instructing Babcock to "just initial" the alteration. We need not consider whether the
trial court's ruling was in error, because even assuming it was, in light of Babcock's failure to
challenge the finding that the September 1995 deed was not re-executed, the error was harmless. 
See Tex. R. App. P. 44.1.



at inference. In any event,
the evidence supports the finding that the deed was altered after execution, and Babcock does not
challenge on appeal the trial court's finding that "Plaintiff's deed was never re-execut