Case No. 01-15-00225-CV

FILED IN
1ST COURT OF APPEALS
HOUSTON, TEXAS

NOV 16 2015

CHRISTOPHER A. PRINE
CLERK

# IN THE

# COURT OF APPEALS

# FIRST JUDICIAL DISTRICT

# HOUSTON, TEXAS

---

Aaron Chevalier,
Appellant-Tenant

-vs-

W M Roberson,
Appellee-Landlord (*Pro Se*)

---

On Appeal from Judgment No. 1058132
County Civil Court at Law No. One
Hon. Debra Ibarra Mayfield, Judge
Houston, Texas

---

## FIRST AMENDED BRIEF FOR APPELLEE (PRO SE)

W M ROBERON
P.O. Box 842583
Houston, TX 77284

## Request for Oral Argument

Appellee does not waive oral argument. Appellee believes that oral argument is not necessary for this Court to understand the issues in the Brief. However, if this Court desires oral argument, Appellee wishes to participate. Tex.R.App.P.39.7.

## Identities of Parties and Counsel

The following is a complete list of names and addresses of all parties to the trial court proceeding and their counsel.

Appellant:

Aaron Chevalier

Appellant's Counsel:

Nasischa Biscette, 1811 Bering Dr. #300, Houston, TX 77057

Appellee:

W M Roberson (Pro Se)

Appellee's Counsel:

P.O. Box 842583
Houston, TX 77284-2583

Trial Court Judge:

The Hon. Debra Ibarra Mayfield
(former-County Civil Court at Law # 1)
Harris County, Texas

## Table of Contents

Page:

Request for Oral Argument . . . . . . . . i

Identities of Parties and Counsel . . . . . . . ii

Table of Contents . . . . . . . . . iii

Index of Authorities . . . . . . . . iv-ix

Statement of the Case . . . . . . . . . 1

Statement of Facts . . . . . . . . . 1-8

Summary of the Argument . . . . . . . . 8

Argument and Authorities . . . . . . . 9-29

Conclusion and Prayer . . . . . . . 29

Certificate of Service . . . . . . . . 30

Certificate of Compliance . . . . . . . 30

Appendix . . . . . . . . . . 31

# Index of Authorities

**Federal Cases and Statutes:**

Fuentes v. Shevin, 92 S. Ct. 1983, 1994 (1971)   .    .    .    .  25

U. S. Const., Article I, § 10 (Contract).   .    .    .    .    .    .  19

U.S. Const., XIV Amend. (Due Process & Equal Protection).   3-4, 24-25

**Texas Cases:**

Am. Flood Research, Inc. v. Jones,
192 S.W.3d 581, 583 (Tex. 2006)   .    .    .    .    .    .  27

Bell v. Ott, 606 S.W.2d 942, 952
(Tex. App. -Waco 1980, writ ref'd n.r.e.)   .    .    .    .    .  22

Black v. Washington Mut. Bank, 318 S.W.3d 414, 416, 417
(Tex. App. –Houston [1st Dist.] 2010, pet. dism'd w.o.j.)   .   10, 13

Bittinger v. Wells Fargo, N.A., as Trustee, 14-10-00698-CV
(Tex.App -Houston [14th Dist.] 2011).   .    .    .    .    .  11

Cate v. Woods, 299 S.W.3d 149, 152
(Tex. App. -Texarkana 2009, no pet.)   .    .    .    .    .  20

Christiansen v. Prezelski, 782 S.W.2d 842, 843 (Tex. 1990)   .    .  18

Chrysler Corp. v. Blackmon, 841 S.W.2d 844, 852 (Tex. 1992) .    .  28

City of El Paso v. Heinrich, 284 S.W.3d 366, 377 (Tex. 2009)  .    .  19

City of Keller v. Wilson, 168 S.W.3d 802, 819 (Tex. 2005) .    .  26, 28

Cubertson v. Brodsky, 788 S.W.2d 156, 157
(Tex. App. -Fort Worth 1990, writ denied) .    .    .    .  20

Diversified, Inc. v. Hall, 23 S.W.3d 403, 406
(Tex. App. -Houston [1st Dist.] 2000, pet. denied)    .    .  21-22

Dormady v. Dinero Land & Cattle Co., L.C., 61S.W.3d 555, 557
(Tex. App. -San Antonio 2001, pet. dis'm w.o.j.)(op. on reh'g) . 11

Dow Chem. Co. v. Frances, 46 S.W.3d 237, 241 (Tex. 2001) . 27-28

Enter. Leasing Co. v. Barrios,
156 S.W.3d 547, 549–50 (Tex. 2004) (per curiam) . . . 17

Foreness v. Hexamer, 971 S.W.2d 525
(Tex. App. -Dallas 1997, pet. denied). . . . . 15

Geodyne Energy Income Prod. P'ship I-E v. Newton Corp.,
161 S.W.3d 482, 486-87 (Tex. 2005). . . . . . 21

Gordon v. West Houston Trees, LTD.,
462 S.W.3d 520, 522-23 (Tex. App. -Houston [1st Dist.] 2011) 21-23

GTE Mobilnet of South Texas vs. Pascouet, 61 S.W.3d 599, 616
(Tex. App. –Houston [14 Dist.] 2001, pet denied). . . 28

Haginas v. Malbis Mem. Found., 354 S.W.2d 368, 371 (Tex. 1962) . 10

Hahn v. Love, 321 S.W.3d 517, 531
(Tex. App. -Houston [1st Dist.] 2009, pet. denied) . . . 22

Haith v. Drake, 596 S.W.2d 194, 196
(Tex. App. -Houston [1st Dist.] 1980, writ ref'd n.r.e.) . . . 10

Hebisen v. Clear Creek Indep. Sch. Dist., 217 S.W.3d 527, 536
(Tex. App.—Houston [14th Dist.] 2006, no pet.) . . . . 17

Henningan v. I.P. Petroleum Co.,
858 S.W.2d 371, 372 (Tex. 1993) . . . . . . . 23

Holy Cross Church of God in Christ v. Wolf,
44 S.W.3d 562, 568 (Tex. 2001) . . . . . . 23

In re Cerberus Capital Mgmt., L.P., 164 S.W.3d 379, 382 (Tex. 2005) . 27

In re Marriage of Rice, 96 S.W.3d 642, 645-46
(Tex. App.—Texarkana 2003, no pet.) . . . . . 18

Jackson v. Van Winkle, 660 S.W.2d 807, 809 (Tex. 1983) . . . 26

Jacobs v. Cude, 641 S.W.2d 258, 260
(Tex. Civ. App.—Houston [14th Dist.] 1982, writ. ref.'d n.r.e.) 15-16

King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 755 (Tex.2003) . . 21

Koslow's v. Mackie, 796 S.W.2d 700, 704 (Tex. 1990) . . . 27

Longoria v. Lasater, 292 S.W.3d 156, 165 n. 7
(Tex. App. -San Antonio 2009, pet. denied) . . . . 22

Lopez v. Sulak, 76 S.W.3d 597, 605
(Tex. App. -Corpus Christi 2002, no pet.) . . . . . 12

Madison v. Gordon, 39 S.W.3d 604, 606 (Tex. 2001) . . . 20

Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998) . . 27

Marshall v. Hous. Auth. of San Antonio,
198 S.W.3d 782, 787 (Tex. 2006) . . . . . . 11

Martin v. Amerman, 133 S.W.3d 262, 267 (Tex.2004) . . . 22

McGlothlin v. Kliebert, 672 S.W.2d 231, 233 (Tex. 1984) . . . 12

McIntyre Mach., Ltd. v. Nicastro, 131 S. Ct. 2780, 2789 (2011) . . 9

Mitchell v. Armstrong Capital Corp., 911 S.W.2d 169, 171
(Tex. App.—Houston [1st Dist.] 1995, writ denied) . . . 10

Morris v. American Home Mortgage Serv., Inc.,
360 S.W.3d 32, 34-35 (Tex. App. –Houston
[1st Dist.] 2012, no pet.) . . . . . . . 10-14, 16

Murphy v. Countrywide Home Loans, Inc., 199 S.W.3d 441, 446
(Tex. App. -Houston [1st Dist.] 2006, pet. denied) . . . 13

Nicholson v. Fifth Third Bank, 226 S.W.3d 581, 583
(Tex. App.—Houston [1st Dist.] 2007, no pet.) . . . . 17

Nissan Motor Co. v. Armstrong, 145 S.W.3d 131, 144 (Tex. 2004) . 25

Noell v. Crow-Billingsley Air Park Ltd. P'ship,
233 S.W.3d 408, 416-17 (Tex. App. –Dallas 2007, pet. denied) . 20

Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986) . . . 28

Puentes v. Fannie Mae, 350 S.W.3d 732
(Tex. App. –El Paso, 2011, pet. dism'd w.o.j.) . . . . 24

Rice v. Pinney, 51 S.W.3d 705, 708, 713 . . . . 10-12
(Tex. App.—Dallas 2001, no pet.) . . . . .

Richards v. Schion, 969 S.W.2d 131, 133
(Tex. App.—Houston [1st Dist.] 1998, no pet.) . . . . 18

Rogers v. Ricane Enters., Inc., 884 S.W.2d 763, 769 (Tex. 1994) 20-22

Sandoval v. Comm'n for Lawyer Discipline, 25 S.W.3d 720, 722
(Tex. App.—Houston [14th Dist.] 2000, pet. denied) . . 17-18

Schafer v. Conner, 813 S.W.2d 154, 155 (Tex. 1991) (per curiam) 17-18

Scott v. Hewitt, 127 Tex. 31, 90 S.W.2d 816, 818-19 (1936) . . 12

Smith v. Dass, Inc., 283, S.W.3d 537, 542
(Tex. App. -Dallas, 2009, no pet.) . . . . . . 20

Solomon, Lambert & Roth Assoc., Inc. v. Kidd,
904 S.W.2d 896, 901 (Tex. App. [1st Dist.] 1995, no pet.) . . 15

State v. Holland, 221 S.W.3d 639, 642 (Tex. 2007) . . . . 13

State Dep't of Highways & Pub. Transp. v. Gonzalez,
82 S.W.3d 322, 327 (Tex. 2002) . . . . . . 9

Sysco Food Servs. v. Trapnell, 890 S.W.2d 796, 801 (Tex. 1994) . 24

Tex. Ass'n of Bus. v. Tex. Air Control Bd.,
852 S.W.2d 440, 443–44, 446 (Tex. 1993) . . . . 9, 13-14

Tex. Dep't of Parks & Wildlife v. Miranda,
133 S.W.3d 217, 226 (Tex. 2004) . . . . . . 13

Thomson v. Locke, 66 Tex. 383, 1 S.W. 112, 115 (1886) . . . 22

Villalon v. Bank One, 176 S.W.3d 66, 71
(Tex. App.—Houston [1st Dist.] 2004, pet. denied) . . 11-12

Waffle House, Inc. v. Williams, 313 S.W.3d 796, 813 (Tex. 2010) . 26

Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992) . . . . 27

White v. White, 142 Tex. 503, 179 S.W.2d 503, 505 (1944) . . 15

Williams v. Bank of N.Y. Mellon, 315 S.W.3d 925, 927
(Tex. App. - Dallas 2010, no pet.) . . . . . 10, 12

Texas Statutes and Rules:

TEX. CIV. PRAC. & REMEDIES CODE ANN. § 16.021 et seq. . . 23

TEX. CONST. Art. I, § 16 (due course of law) . . . . 20

TEX. CONST. Art. V, § 19 . . . . . . . . . 9

TEX. CONST. Art. XVI § 50(a) . . . . . . . 20

TEX. GOV'T CODE ANN. § 27.031(a)(2) (Vernon Supp. 2014) . . 10

TEX. GOV'T CODE ANN. § 27.031(b) (4) . . . . . 10

TEX. PENAL CODE ANN. §§ 1.07(a), (35), (A- B) . . . . 19

TEX. PENAL CODE ANN. § 1.07(a) (39). . . . . . 19

TEX. PROBATE CODE 52A (Affidavit of Heirship). . . . . 14

TEX. PROP. CODE ANN. § 13.001(b) (West 2004) . . . . 20

TEX. PROP. CODE ANN. § 22.001(a) (Vernon 2000) . . . 21

TEX. PROP. CODE ANN. § 24.002 . . . . . . 11

TEX. PROP. CODE ANN. § 24.004 (Vernon 2014) . . . 9-10

TEX. PROP. CODE ANN. § 24.005 . . . . . . 11

TEX. PROP. CODE ANN. §§ 91.001(e) (1-2) . . . . . 11

TEX. R. APP. P. 33.1(a) . . . . . . . 18-19

TEX. R. APP. P. 34.1 . . . . . . . . 16

TEX. R. APP. P. 34.6(c) (1) . . . . . . . 18

TEX. R. APP. P. 38.1(g) . . . . . . . . 1, 8

TEX. R. APP. P. 44.1(a) (1-2) . . . . . . 24

TEX. R. CIV. P. 21 (Service of Record) . . . . . 25

TEX. R. CIV. P. 21a (Certificate of Service). . . . . 25

TEX. R. CIV. P. 21b . . . . . . . . 25

TEX. R. CIV. P. 93, (7) . . . . . . . . 18

TEX. R. CIV. P. 510.10(c) . . . . . . . 10

TEX. R. CIV. P 746 . . . . . . . . 10

TO THE HONORABLE COURT:

W M Roberson, appellee (pro se), respectfully submits his brief in the above captioned case, showing:

## Statement of the Case

This is an eviction case (*Appx 5; CR 6-9*). In an appeal from the justice court, the county court at law determined that appellee W M Roberson had a superior right of possession of a residence (*Appx 25-26*).

## Statement of Facts

*TEX. R. APP. P. 38.1(g)* states that the statement of facts portion of an **appellant's brief "must be supported by record references."** Appellant's Brief violates this rule by providing no record citations, and therefore, the following statement of facts is provided by the Appellee.

On Feb. 23, 2015, the trial court heard testimony and received evidence from the Appellee that on March 9, 2005, a special warrant deed was signed by Ella F. Wilmore conveying ownership of the residence in question to Appellee (See *Id.; Appx 36-37*). In May 2012, a landlord-tenant agreement was signed and initialed by Appellant to rent from Appellee said property on a monthly basis to commence on June 1, 2012 (*Id.; Appx 28-32*).

In July 2012, Appellee filed in the county property records an affidavit notice of "deed and adverse possession" citing his special warrant deed, as

1

legal "Remedies for the Record Owner" in response to allegations a trespasser "may have" lived in his boarded-up property prior to his total renovation and rental of the premises (*Id.; Appx 36-37, CR 67-68,189*).

In Oct. 2012, Appellant complained that the name "Ella F. Wilmore" signed on the special warrant deed is different than "Ella Francis Townsend" named in a 1959 deed; despite knowing that she later married Mr. Wilmore; and Appellant filed in the prior trial record (but withheld from Appellee) an ownership and encumbrance report, and partial pages of a home equity loan that both prove "Ella F. Wilmore's" signature in Sept. 1999 (*Id.; Appx 36-37, CR 155-156*), but he withheld from evidence loan "Page 7 of 8" which would have proved that Wilmore's initials and signature match the deed to Appellee (*Id., Appx A-1*); and a Texas driver's license issued to "Ella F. Wilmore" was used on the loan to ID her by a notary (*Id.; CR 165-171*); and he also withheld an escrow account that further proves she had abandoned the use of her maiden name of "Townsend" shortly after her husband's death in 1979 (*Id.; CR 175*). Appellee offered new evidence that "Ella Francis Wilmore" is also the name used in her own obituary in 2008 (*Id.; CR 38*).

On Oct. 24, 2012, Appellant filed a baseless criminal complaint with the District Attorney's Office similarly alleging that the Appellee had fraudulently

2

rented the premises, but there is **no finding of probable cause to arrest** (*Id.; CR 177*).

On Nov. 1, 2012, Appellant failed to pay rent and breached lease contract paragraphs 4, 21, 22 & 28, and failed to quit possession after being served notices to terminate lease and vacate the premises (*Id.; Appx 28-32*).

On Nov. 16, 2012, Appellant filed a small claims action in the Justice of the Peace Court, Precinct 5, Place 1, alleging that Appellee fraudulently rented the premises in which he moved into "on June 1, 2012," contrary to his later claim of move-in "In 2011"), and that lawsuit was also dismissed after Appellee discovered said impeachment evidence (*Id.; CR 146, 204*).

On Jan. 9, 2013, Appellee filed a prior eviction action due to Appellant's failure to pay rent or vacate the premises at 6922 Cluett St., Houston, TX 77028 (*Id.; CR 141*). On Jan. 25, 2013, Appellant filed an underserved *ex parte* answer with exhibits alleging that Appellee did not own the premises, and that he had a "grandson" "sole heir" "caretaker" claim to the premises without due process notice or certificate of service to Appellee (*Id.; CR 43, 143-144 et seq.; 190*). On Jan. 30, 2013, the Justice Court entered judgment for possession of the premises to Appellee. On Feb. 21, 2013, Appellant filed another underserved *ex parte* answer with exhibits alleging new and unsworn

fraud allegations **without due process notice or certificate of service to Appellee** (*Id; CR 192-193 et. seq.*).

On Feb. 28, 2013, Appellant filed in the county property records a warrant deed to the premises signed on Feb. 25, 2013, by an alleged "sister" "co-heir," which admittedly and conclusively refutes Appellant's prior "grandson" "sole heir" "caretaker" claim (*Id., CR 43, 44-46*); moreover, he **withheld this impeachment evidence from the trial court and Appellee**), and this new evidence was first discovered by Appellee on Oct. 31, 2014.

On March 4, 2013, the County Civil Court at Law No. 1 *un-wittedly* considered the unserved *ex parte* exhibits, and entered a take nothing judgment (*Id.; CR 191*). On April 4, 2013, Appellee filed notice of appeal. On April 10, 2013, Appellee filed an amended motion for new trial based on first knowledge that the face of the appellate record contains conclusive evidence of no certificates of service on said answers and exhibits. On April 22, 2013, Appellee filed a supplement for new trial based on first knowledge that the record also contains an unserved *ex parte* affidavit of heirship filed by Appellant which **refutes his "grandson," "sole heir," "caretaker" claim** to the premises (*Id.; CR 39-42, 43*), including other unserved *ex parte* exhibits which refutes his unsworn fraud allegation of different names signed on the special warrant deed as compared to his other withheld exhibits (*Id.;*

4

*CR 155-156, 165-171*). On April 29, 2013, Appellee's motion for new trial was denied, and requests for findings of fact and conclusions of law were overruled on May 3, 2013 (*CR 202*). On July 15, 2014, the Court of Appeals held that **without a court reporter's record** - (overlooking Appellee's timely motion for such transcript and record cited in his motion for rehearing) - the trial court's take nothing judgment must be affirmed (*CR 203-209*). On Oct. 7, 2014, Appellee's motion for rehearing was denied (*Id.*).

On Dec. 19, 2014, Appellee filed in the county property records his special warrant deed to settle claims that it was unrecorded (*Id; Appx 36-37*), despite public notice of same (*Id.; CR 67-68*). On Dec. 15, 2014, Appellee served new notices to terminate the lease and to vacate the premises **"unless you pay all said rents and late fees since Nov. 2014"** on the Appellant by certified mail return receipt requested (*Id.; CR 33-35*).

On Dec. 29, 2014, Appellee filed this latest eviction suit against Appellant in case # EV31C0071928, Harris County Justice Court, Precinct 3, Place 1, which was dismissed without prejudice on Jan. 14, 2015 (*Id.; CR 5-10*). After notice of appeal to the Harris County Civil Court at Law # 1, the trial judge heard these statements of fact, and allowed both parties the opportunity to present the merits of this case on Feb. 23, 2015. Appellee testified that in 2005 his notary agent met over coffee with Mrs. Wilmore who transferred

ownership of the premises to Appellee under a special warrant deed with a **disclaim of "heir"** (*Id.; Appx 36-37*). The lack of a business record certificate failed Appellee's attempt to offer the home equity loan signature "Page 7 of 8," which was the only page that Appellant knowingly withheld from evidence because "Ella F. Wilmore's" signature matched the name on Appellee's deed (*Id.; Appx 36, A-1; cf. CR 165-171* total of only 7-pages).

Appellee sought to introduce more evidence to support his testimony that "Appellant and Counsel had perpetrated a fraud upon the court" by knowing filing baseless and fanciful claims in order for the Appellant to live rent-free; however, the court asked for their response (*Id.*).

Appellant admitted that"[he] **did not live in the premises**" before signing the lease, and "**On June 1, 2012 ... [he] moved into the property**," which admittedly and conclusively refutes his prior residence claim "In 2011" (*Id.; CR 43, 146; cf. 204*). Appellant also testified that he initialed the lease (*Id.; Appx 28-32*). **Appellant has absolutely no evidence of title from Wilmore** as "a common source" of ownership of the premises, or any will or probate order to transfer title, and his alleged warrant deed from a "sister" "co-heir" was withheld from trial evidence in 2013 (*Id.; CR 47-49*), which now admittedly and conclusively refutes his "grandson" "sole heir" "caretaker" claim (*Id.; CR 43*). The Trial Court re-examined the prior trial record and

6

appellate opinion (*CR 203-210*), before denying res judicata and collateral estoppel claims, ruling that there are "**no prior rulings on the merits**" of: (1) <u>new</u> notices to vacate and terminate lease contract for non-payment of rent (*Id.; CR 33-35*); (2) <u>new</u> public recording of Appellee's special warrant deed (*Id.; Appx 36-37*); (3) <u>new</u> signature evidence of Ella F. Wilmore (*Id.; CR 40, 165-171*), and discontinued use of her "Townsend" maiden name in a home equity loan and obituary (*Id.; CR 38, 165-171*); (4) <u>new</u> "sister" "co-heir" deed withheld from prior evidence by the Appellant (*Id.; CR 44-46*), which contradict his "grandson" "sole heir" "caretaker" claim (*Id.; CR 43*); and (5), Mrs. Wilmore's affidavit of heirship previously filed but withheld from the Appellee that proves "**NO CHILDREN WERE BORN OR ADOPTED**" and "without leaving a will" (*Id.; CR 39-42, 44-46*), which admittedly and conclusively refutes Appellant's "grandson" "sole heir" and sister "co-heir" claims or deed (*Id.; CR 43, 44-46*).

The Trial Court also heard other testimony and arguments, assessed the parties' demeanor and credibility, and entered a final judgment for possession of the premises in favor of Appellee (*Id.; Appx 25-26*).

On April 2, 2015, Appellant's second amended motion for new trial based on new evidence of a similar fraud was overruled due to the foregoing facts, including admitted and conclusive evidence of his Jan. 2013 answer and

exhibit proving his <u>actual knowledge</u> of the "Bayou Woods" "third property" affidavit (*Id.; CR 147, 184; cf. 125-136*).

On April 24, 2015, Appellant filed a trespass to try title action against Appellee in case #2015-23604 in the 151st District Court of Harris County, and to hinder the trial court's writ of possession he obtained an *ex parte* temporary restraining order that was dismissed in May 2015 (*Id.*).

<u>Please Take JUDICIAL NOTICE</u> of the final judgment of dismissal in case #2014-59807 in 133rd Dist. Ct. of Harris County on May 2015, including the aforesaid **five (5) independent official findings of no evidence of fraud** (*CR 125-136, et al.*).

This appeal follows **without a reporter's record** in clear violation of the *TEX. R. APP. P. 38.1(g)*.

<u>Summary of the Argument</u>

Appellant appeals the county court's judgment in Appellee's favor, contending that the trial court : 1)  had no subject matter jurisdiction; 2)  had no evidence of Appellant's ownership of the premises or a landlord-tenant relationship; 3)  erred in overruling res judicata or collateral estoppel claims; and 4)  erred in denying a motion for new trial.  However, there is no credible support in the record to justify overturning the decision of the trial court.

## Argument and Authorities

### Jurisdiction

Subject-matter jurisdiction is essential to the authority of a court to decide a case and is never presumed. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). The existence of subject-matter jurisdiction is a question of law, which the court must decide *de novo*. See *State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). Subject matter jurisdiction is a structural aspect of our legal system, which make a court's ruling legal only if it has jurisdiction in the first place. See *McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2789 (2011). This "central concept of sovereign authority" is the core source of the "conclusion that jurisdiction is in the first instance a question of authority rather than fairness[.]" *Id.* at 2788-89. Thus, "whether a judicial judgment is lawful depends on whether the sovereign has authority to render it." *Id.*

### Eviction

The *Texas Constitution Article V, Section 19,* states that "[j]ustice of the peace courts shall have ... such other jurisdiction as may be provided by law." *TEX. CONST. Art. 5, § 19.* Original jurisdiction over forcible detainer and eviction actions is expressly given to the justice court of the precinct where the property is located. See *TEX. PROP. CODE ANN. § 24.004*

9

*(Vernon 2014); TEX. GOV'T CODE ANN. § 27.031(a) (2) (Vernon Supp. 2014); Rice v. Pinney,* 51 S.W.3d 705, 708 (Tex. App. -Dallas 2001, no pet.). A judgment of the justice court may then be appealed to the county courts for a trial *de novo,* and the jurisdiction of a statutory county court is confined to the jurisdictional limits of the justice court. *TEX. R. CIV. P. 510.10(c); Rice,* 51 S.W.3d at 708. A justice court also has jurisdiction to issue a writ of possession to enforce an eviction. *TEX. PROP. CODE ANN. § 24.0054(b).*

The justice court is expressly denied jurisdiction to adjudicate title to land. *TEX. GOV'T CODE ANN. § 27.031(b) (4); TEX. R. CIV. P 746; Haginas v. Malbis Mem. Found.,* 354 S.W.2d 368, 371 (Tex. 1962); *Black v. Washington Mut. Bank,* 318 S.W.3d 414, 416, 417 (Tex. App. –Houston [1st Dist.] 2010, pet. dism'd w.o.j.)(holding that **plaintiff is not required to prove title**); and *Mitchell v. Armstrong Capital Corp.,* 911 S.W.2d 169, 171 (Tex. App. - Houston [1st Dist.] 1995, writ denied). If it becomes apparent that a *genuine issue* regarding title exists in an eviction suit, the court does not have jurisdiction over the matter. *Id.* at 171 (citing *Haith v. Drake,* 596 S.W.2d 194, 196 (Tex. App. -Houston [1st Dist.] 1980, writ ref'd n.r.e.)). See also *Williams v. Bank of N.Y. Mellon,* 315 S.W.3d 925, 927 (Tex. App. - Dallas 2010, no pet.). *Morris v. American Home Mortgage Servicing, Inc.,* 360 S.W.3d 32, 34 (Tex. App. -Houston [1st Dist.] 2011, no pet.); and *Rice,* 51 S.W.3d at 709.

In a forcible detainer trial the judge or a requested jury must decide the sole issue of who has superior rights to actual possession of real property after notice to vacate under *TEX. PROP. CODE ANN. §§ 24.002, & 24.005.* However, a notice to vacate may be waived by contract or breach thereof. *TEX. PROP. CODE ANN. §§ 91.001(e) (1-2).* A forcible detainer action is intended to be a speedy, simple, and inexpensive means to obtain possession of real property under *Marshall v. Hous. Auth. of San Antonio,* 198 S.W.3d 782, 787 (Tex. 2006).

To prevail, it is not necessary for the plaintiff to prove title to the property; rather, the plaintiff is only required to present sufficient evidence of ownership to demonstrate a superior right to immediate possession. *Bittinger v. Wells Fargo, N.A., as Trustee,* 14-10-00698-CV (Tex.App -Houston [14th Dist.] 2011); *Rice,* 51 S.W.3d at 709; and *Dormady v. Dinero Land & Cattle Co., L.C.,* 61 S.W.3d 555, 557 (Tex. App. -San Antonio 2001, pet. dis'm w.o.j.)(op. on reh'g). A written or oral landlord-tenant agreement also provides a basis for the court to determine the right to immediate possession without resolving the question of title. *Morris,* 360 S.W.3d at 34, (citing *Villalon v. Bank One,* 176 S.W.3d 66, 71 (Tex. App. -Houston [1st Dist.] 2004, pet. denied)).

11

An action for forcible detainer is cumulative of all other remedies a party may have in the courts of this state, including a suit to try title. *Morris*, 360 S.W.3d at 35. "If all matters between the parties cannot be adjudicated in the justice court ... then either party may maintain an action in a court of competent jurisdiction for proper relief." *McGlothlin v. Kliebert*, 672 S.W.2d 231, 233 (Tex. 1984). For these reasons, a forcible detainer suit may run concurrently with another action in another court even if the other action adjudicates matters that could result in a different determination of possession from that rendered in the forcible detainer suit. See *Villalon*, 176 S.W.3d at 70-71. Matters relating to possession may overlap in the two proceedings because "a judgment of possession in a forcible detainer action is a determination only of the right to immediate possession and does not determine the ultimate rights of the parties to any other issue in controversy relating to the realty in question." *Lopez v. Sulak*, 76 S.W.3d 597, 605 (Tex. App. -Corpus Christi 2002, no pet.). Likewise, any question over whether a real estate sale or deed is invalid "must be brought in a separate suit." See *Williams*, 315 S.W.3d at 927; *Scott v. Hewitt*, 127 Tex. 31, 90 S.W.2d 816, 818-19 (1936); *Rice*, 51 S. W. 3d at 710; and *Murphy v. Countrywide Home Loans, Inc.*, 199 S.W.3d 441, 446 (Tex. App. -Houston [1st Dist.] 2006, pet. denied).

12

## Petition

The court must "focus first on the plaintiff's petition to determine whether the facts pled affirmatively demonstrate that jurisdiction exists." *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007); also *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)("whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is a question of law."). The court must examine the pleadings, taking as true the facts pleaded, and determine whether those facts support jurisdiction in the trial court. *Morris*, 360 S.W.3d at 34, (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 446). The Court must construe the pleadings in favor of the pleader. Id.

Appellee's superior rights to immediate possession of the premises is proved by four (4) "independent basis" of ownership under a recorded special warrant deed, rental contract, affidavit of possession, and a <u>sworn</u> eviction petition as a matter of fact and law (Appx *5, 28-32, 36-37,CR 180-181*). *Black*, 318 S.W.3d at 417. Appellee's petition must be taken as true and it states that he owns the property, there is a signed lease, failure to pay rent, and failure to quit possession with notice to vacate (Appx *5, 28-32, 33-35*).

Appellant offered no credible evidence of actual possession of the premises under the <u>withheld deed</u> of an alleged "sister" "co-heir," which clearly impeached his <u>prior</u> "grandson" "sole heir" claim (*CR 43; cf. 47-49*).

13

Appellant's <u>unserved answer</u> alleged that the grandson was an "elderly" heir to maliciously increase the civil and criminal severity of his charge, contrary to his admission of Wilmore's affidavit of heirship disclaim of any "children" at the age of 81-years old (*CR 39-42, 154; cf. 143*).

Appellant's 2012 actual knowledge of the special warrant deed clearly proves that his alleged 2013 purchase of the premises was not bought as an "innocent" or bona fide purchaser for a value of at least $10.00 or more (*CR 47-49; cf. 180-181, 190*). Moreover, Appellant offered no evidence of any ownership transfer of the premises under: (1) a title deed from Wilmore to any "sole-" or "co-heir;" (2) a will or probate court order for any heir; (3) an affidavit of heirship for any heir under *TEX. PROBATE CODE 52A*; or (4) a cause of action filed by any heir as a matter of fact and law. The record contains no credible evidence to contradict the trial court's implicit findings of fact and conclusions of law to support the right to possession of the premises in favor of Appellee. Taking as true the facts pled by Appellee and construing them in his favor, as the court must, it is clear that these facts support the judgment of the trial court. See *Tex. Ass'n of Bus.*, 852 S.W.2d at 446; *Morris*, 360 S.W.3d at 34–35. The facts pled by Appellee did establish his superior rights to immediate possession of the premises. This ownership evidence conferred on the justice court the jurisdiction to

14

determine the right to immediate possession of the premises as requested by Appellee.

## Judgment

There is a legal presumption that judgments are signed with regularity and in conformance with all legal requirements; that is, judgments are presumed to be supported by facts established when the cause was tried. *White v. White*, 142 Tex. 503, 179 S.W.2d 503, 505 (1944) ("[I]f the record in the cause does not negative the existence of facts authorizing the court to render judgment, the law conclusively presumes that such facts were established before the court when such judgment was rendered[.]"). This is true even when the recitations in a judgment do not show jurisdiction, the law presumes that such facts were show. *Foreness v. Hexamer*, 971 S.W.2d 525, 531 (Tex. App.—Dallas 1997, pet. denied) ("When recitations in a judgment are insufficient to affirmatively show the court's jurisdiction, a presumption in favor of jurisdiction prevails so long as the recitations do not affirmatively show a lack of jurisdiction."); *Solomon, Lambert & Roth Assoc., Inc. v. Kidd*, 904 S.W.2d 896, 901 (where a judgment "does not affirmatively show lack of jurisdiction on its face, but merely fails to affirmatively recite jurisdiction, then a jurisdictional presumption in favor of the judgment applies"). The judgment must show lack of jurisdiction on its face. *Jacobs v.*

15

*Cude*, 641 S.W.2d 258, 260 (Tex. Civ. App. -Houston [14th Dist.] 1982, writ. ref.'d n.r.e.) ("If a judgment is regular on its face and does not reveal a lack of jurisdiction of the court to enter the same, it must be presumed valid").

Even in the face of an allegation of trespass to try title in another court, the justice of the peace court has jurisdiction. *Morris*, 360 S.W.3d at 35. Moreover, there is nothing in the record of this case to overcome the presumption that the judgment was entered in conformance with the law (*CR 25-26*). Similarly, the record does not "affirmatively and conclusively show that the court rendering the judgment was without jurisdiction of the subject matter."

## Remaining Issues

In his remaining issues, Appellant remaining issues complain that the trial court erred in determining that he should be evicted due to an alleged lack of ownership or a landlord-tenant relationship, erred in denying res judicata and collateral estoppel claims, and erred in denying his motion for new trial.

However, the record on appeal does not contain a reporter's record of the live testimony in either the justice or county court.

## Reporter's Record

*TEX. R. APP. P. 34.1* provides that the appellate record consists of a clerk's record and, if necessary to appeal, a reporter's record. Here, the

16

record on appeal contains no evidence to dispute the factual allegations in the Appellee's <u>sworn</u> petition.

An appellant has the burden to bring forward a sufficient record to show the trial court's claimed error. *Nicholson v. Fifth Third Bank*, 226 S.W.3d 581, 583 (Tex. App. -Houston [1st Dist.] 2007, no pet.). In the absence of a reporter's record, the court must presume that the omitted evidence supports the trial court's judgment. See *Schafer v. Conner*, 813 S.W.2d 154, 155 (Tex. 1991) (per curiam); *Sandoval v. Comm'n for Lawyer Discipline*, 25 S.W.3d 720, 722 (Tex. App. -Houston [14th Dist.] 2000, pet. denied); see also *Enter. Leasing Co. v. Barrios*, 156 S.W.3d 547, 549–550 (Tex. 2004) (per curiam)(stating that "on appeal Barrios bears the burden to bring forward the record of the summary judgment evidence to provide appellate courts with a basis to review his claim of harmful error" and concluding that "[i]f the pertinent summary judgment evidence considered by the trial court is not included in the appellate record, an appellate court must presume that the omitted evidence supports the trial court's judgment"). Also, the court assumes that "the trial court heard sufficient evidence to make all the necessary findings in support of its judgment." See e.g. (*SF pg. 1-7*); and *Hebisen v. Clear Creek Indep. Sch. Dist.*, 217 S.W.3d 527, 536 (Tex. App. - Houston [14th Dist.] 2006, no pet.).

17

Here, Appellant did not provide a record of any of the live testimony before the justice court or the county court, nor does the record contain a title transfer of ownership from Wilmore to any alleged "grandson" "**sole heir,**" and/or "sister" "**co-heir.**"   The court must presume that the evidence presented at trial supported the trial court's judgment.  See *Schafer*, 813 S.W.2d at 155; *Sandoval*, 25 S.W.3d at 722.  Likewise, when the entire record is not brought forward - transcription of the trial is missing - the judgment must be affirmed. See e. g. *TEX. R. APP. P. 34.6(c) (1)*; *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990); *Richards v. Schion*, 969 S.W.2d 131, 133 (Tex. App. -Houston [1st Dist.] 1998, no pet.); *In re Marriage of Rice*, 96 S.W.3d 642, 645-46 (Tex. App.—Texarkana 2003, no pet.).  Thus, Appellant's remaining issues should be overruled due to his failure to provide a recorder's record, including other principles of law below.

## Contract

Appellant admits he signed and initialed the landlord-tenant agreement, and his complaint of a lack of execution on the contract was not sworn contrary to *TEX. R. CIV. P. 93, (7)*.  Moreover, the record on appeal does not reflect that a lack of signatures complaint was first made to the trial court. See *TEX. R. APP. P. 33.1(a)* ("As a prerequisite to presenting a complaint for appellate review, the record must show that: (1) the complaint was made to

18

the trial court by a timely request, objection, or motion . . . and (2) the trial court: (A) ruled on the request, objection, or motion, either expressly or implicitly; or (B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal"). See also *City of El Paso v. Heinrich*, 284 S.W.3d 366, 377 (Tex. 2009) (observing that constitutional complaints can even be waived by failure to object at trial).

Appellee's special warrant deed and landlord-tenant agreement are enforceable property rights contracts protected by the Texas and U. S. Constitution (Appx *28-32, 36-37*). The state shall make no "law impairing the obligation of contracts" under the *U. S. Const., Article I, § 10.*

### Ownership

Appellee's special warrant deed is evidence that he is the legal owner of the premises (Appx 36-37). *TEX. PENAL CODE ANN. §§ 1.07(a)(35)(A-B),* defines an *owner* as "a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor; or is a holder in due course of a negotiable instrument." Likewise, Appellee's affidavit of possession, landlord-tenant contract, and <u>sworn</u> petition are further evidence that he is the legal owner of the premises (Appx 5, *28-32, 180-82*). *TEX. PENAL CODE ANN. § 1.07(a) (39),* defines *possession* as "actual care, custody, control, or management."

19

An "unrecorded instrument is binding on a party to the instrument, on the parties' heirs, and on a subsequent purchaser who does not pay a valuable consideration or who has notice of the instrument." See and cf. *Noell v. Crow-Billingsley Air Park Ltd. P'ship*, 233 S.W.3d 408, 416-17 (Tex. App. – Dallas 2007, pet. denied)(citing *TEX. PROP. CODE 13.001(b)*(West 2004)).

Texas has a long-standing interest in protecting homeowners under the *TEX. CONST. Art. XVI § 50(a)*. The Texas Constitution further forbids the deprivation of a citizen's life or property except by the due course of law. *TEX. CONST. Art. I, § 16*. Real property is so unique that specific performance of a contract is an available remedy in suits against real property under *Cate v. Woods*, 299 S.W.3d 149, 152 (Tex. App. -Texarkana 2009, no pet.); *Smith v. Dass, Inc.*, 283, S.W.3d 537, 542 (Tex. App. -Dallas, 2009, no pet.); *Cubertson v. Brodsky*, 788 S.W.2d 156, 157 (Tex. App. -Fort Worth 1990, writ denied). Texas case law also protects innocent buyers such as the Appellee (who as a bona fide purchaser "acquires property in good faith, for value, and without notice of any third-party claim or interest" (CR 44-46, cf. 36-37). *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001)).

Appellant's alleged warrant deed has no specific warrant of title and is merely a "quitclaim," and is not "title or color of title" as required to prove adverse possession (CR 43, 44-46). See e.g. *Rogers v. Ricane Enters., Inc.*,

20

884 S.W.2d 763, 769 (Tex. 1994). See also *Geodyne Energy Income Prod. P'ship I-E v. Newton Corp.*, 161 S.W.3d 482, 486-87 (Tex. 2005). Two causes of action relate to disputes over title to property: trespass to try title and suit to quiet title. *Gordon v. West Houston Trees, Ltd.*, 462 S.W.3d 520, 522-23 (Tex. App. -Houston [1st Dist.] 2011)("A trespass to try title action is the method of determining title to lands, tenements, or other real property." *TEX. PROP. CODE ANN. § 22.001(a)* (Vernon 2000)). Rival claims to title or right of possession may be adjudicated in a trespass to try title action. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 755 (Tex.2003). The plaintiff in a trespass to try title action must recover, if at all, on the strength of its own title and may not rely on the weakness of the defendant's title. *Rogers,* 884 S.W.2d at 768; *Diversified, Inc. v. Hall,* 23 S.W.3d 403, 406 (Tex. App. - Houston [1st Dist.] 2000, pet. denied). "The plaintiff has the burden to establish superior title by showing it has (1) title emanating from the sovereignty of the soil, (2) a superior title in itself emanating from a common source (*CR 36-37*), (3) title by adverse possession (CR 181-82), or (4) title by earlier possession coupled with proof that possession has not been abandoned." *Diversified,* 23 S.W.3d at 406. Because a plaintiff must recover on the strength of his title, the effect of a trespass to try title action is to

21

establish the validity of the plaintiffs' claim of title. *See Rogers,* 884 S.W.2d at 768 (holding plaintiff must recover on strength of his title)). *Id.*

In contrast, a suit to quiet title — also known as a suit to remove cloud from title — relies not on the validity of the plaintiff's claim but on the invalidity of the defendant's claim. *Gordon,* 462 S.W.3d at 522-23; (citing *Longoria v. Lasater,* 292 S.W.3d 156, 165 n. 7 (Tex. App. -San Antonio 2009, pet. denied)). A suit to quiet title exists "to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Id.,* (citing *Bell v. Ott,* 606 S.W.2d 942, 952 (Tex. App. -Waco 1980, writ ref'd n.r.e.)(quoting *Thomson v. Locke,* 66 Tex. 383, 1 S.W. 112, 115 (1886)). A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property. *Id.,* (citing *Hahn v. Love,* 321 S.W.3d 517, 531 (Tex. App. -Houston [1st Dist.] 2009, pet. denied). The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title. *See Id.* (holding plaintiff bears the burden of establishing the adverse claim is a cloud on title that equity will remove).

When a party attempts to bring a trespass to try title claim as a declaratory judgment action, **it is treated as a trespass to try title claim.** *Martin v. Amerman,* 133 S.W.3d 262, 267 (Tex.2004).

22

Appellant testified that he "did not" live in the premises before the rental agreement was signed in 2012, (supported by his prior answer that "On June 1, 2012, [he] moved into the property" (*Id.*; *CR 146*)), refutes the opinion that "In 2011, [he] lived in" the premises(*CR 204*), which proves that he has no credible claim of adverse possession (*CR 43*), or he has abandoned any prior possession (Appx *28-32*). *Henningan v. I.P. Petroleum Co.*, 858 S.W.2d 371, 372 (Tex. 1993)(**pleadings are judicial admissions**); *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001)(parties are barred from disputing their own admissions).

It is not enough to be merely caring for the property" of an heir or others (*CR 43, 187*). TEX. CIV. PRAC. & REM. CODE ANN. §16.021 *et seq.*

Moreover, Appellant offered no evidence of a title to ownership of the premises "emanating from a common source" of Mrs. Wilmore. See *Gordon*, 462 S.W.3d at 522-23 (burden of proof for adverse possession claim).

Although Appellant argues that the special warrant deed is invalid and he filed a declaratory judgment action in the district court, he has no credible evidence to support similar fraud allegations which have all been dismissed by four (4) different independent judges from justice thru district courts.

<u>Res Judicata and Collateral Estoppel</u>

Appellant's res judicata point is contrary to *Puentes v. Fannie Mae*, 350 S.W.3d 732 (Tex. App. –El Paso, 2011, pet. dism'd w.o.j.)(holding that **res judicata does not bar subsequent forcible detainer actions** between the same parties, as facts change, so do possessory rights, and a forcible detainer action must only decide the issue of "possession now").

Moreover, the trial court <u>now</u> had new evidence which supports its judgment in favor of the Appellee, including new evidence that the facts of this case were not "fully and fairly litigated in the first action" contrary to the collateral estoppel principle stated under *Sysco Food Servs. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994). Appellee's rights to due process notice and an opportunity to present a defense against the <u>unserved</u> answers and exhibits were hindered and delayed by Appellant's violation of the service of record rules, which "served no legitimate purpose," and violated "the constitution's guarantee of equality under the laws" per the *U.S. Const., XIV Amend. (Id., CR 39-46, 143-49, 152-76, 178-79, 184, 187-89 et al.)*.

Appellant's said acts and omissions "probably caused the rendition of an improper judgment," or probably prevented the Appellee from properly presenting the merits of the case per *TEX. R. APP. P. 44.1(a) (1-2)*.

Here, this Court should consider the Appellant's efforts to withhold material evidence from Appellee and/or the <u>prior trial</u>, contrary evidence of

Wilmore's affidavit disclaim of "heir," contrary evidence of a "co-heir" deed now before the court, and contrary evidence of Mrs. Wilmore's signature "Page 7 of 8," and Appellant's use of same to emphasize the erroneous "grandson" "sole heir" and "fraud" claims, and whether it was calculated to overcome the contrary evidence of Appellee's special warrant deed with declaim of "heir" and affidavit of possession. See *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004).

## Due Process Notice

Appellant's failure to serve Appellee with due process notice and certificate of service on prior answers and exhibits violated the mandates of *TEX. R. CIV. P. 21* ("copy shall be served"); *21a* ("shall certify to the court"); and *21b* ("sanctions for failure to serve or deliver a copy of pleadings"); including *Fuentes v. Shevin*, 92 S. Ct 1983, 1994 (1971)(Supreme Court holding that litigants have a due process right to prior notice, and a hearing to prevent the arbitrary deprivation of property, assuring a right to introduce evidence at a meaningful time, and in a meaningful manner, and to have a judicial decision based on the evidence properly introduced at trial).

## New Trial

Appellant offered no credible evidence that a similar property fraud claim was newly discovered, not due to a lack of diligence, not cumulative, and

likely to produce a different result at a new trial; especially since the other "similar fraud" case was also dismissed by a district court with subject-matter jurisdiction to decide title to the "feeblest equity" (*CR 147; cf. 125-136*).

Moreover, Appellant's motion for new trial attacked the validity of Appellee's special warrant deed –an issue that the county trial court could not properly address in this eviction action.

A party seeking a new trial on grounds of newly discovered evidence must demonstrate that (1) the evidence has come to its knowledge since the trial, (2) its failure to discover the evidence sooner was not due to lack of diligence, (3) the evidence is not cumulative, and (4) the evidence is so material it would probable produce a different result if a new trial were granted. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010). The trial court's ruling on a motion for new trial is addressed to the trial court's sound discretion and will not be disturbed in the absence of an abuse of discretion. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex. 1983), overruled in part on other grounds by *Moritz v. Priess*, 121 S.W.3d 715, 721 (Tex. 2003). The fact finder is the sole judge of witness credibility and the weight to give their testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). The court may not substitute its own judgment for that of

the trier of fact, or pass upon the credibility of the witnesses. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

## Abuse of Discretion

In applying the abuse of discretion standard, the reviewing court must defer when the trial court acts within the permissible scope of its discretion. *Koslow's v. Mackie*, 796 S.W.2d 700, 704 (Tex. 1990). But, a trial court has no discretion in ascertaining the proper legal rule or how it should apply it to the facts and it is entitled to no deference in those matters. See *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

A trial court abuses its discretion if its decision is so arbitrary and unreasonable that it is a clear and prejudicial legal error or it is based on an incorrect analysis or application of the law. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding). A trial court's decision is arbitrary or unreasonable if it acts without reference to any guiding rules and principles. Am. Flood Research, Inc. v. Jones, 192 S.W.3d 581, 583 (Tex. 2006); *Mackie*, 796 S.W.2d at 704.

A party attacking the legal sufficiency relative to an adverse finding on which it had the burden of proof must demonstrate that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Frances*, 46 S.W.3d 237, 241 (Tex. 2001). The fact finder is the sole

27

judge of a witness's credibility and the weight to give their testimony. *See City of Keller*, 168 S.W.3d at 819; and *Ellis*, 971 S.W.2d at 407.

In a factual sufficiency review, the court considers and weighs all the evidence, both supporting and contradicting the finding. *See Ellis*, 971 S.W.2d at 406-07. A party attacking the factual sufficiency with respect to an adverse finding on which it had the burden of proof must demonstrate that the finding is against the great weight and preponderance of the evidence. *Frances*, 46 S.W.3d at 242.

Whether a decision is arbitrary or unreasonable is decided based on an **independent review of the entire record**. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 852 (Tex. 1992). Here, the trial court's implicit or explicit findings in favor of Appellee are not so contrary to the overwhelming weight of the relevant evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

Moreover, the amount of evidence necessary to affirm the judgment for Appellee is far less than that necessary to reverse the judgment in favor of Appellant (Appx *5, 28-32, 36-37, A-1, CR 159-162, 180-181; cf. CR 47-49, 176*). *GTE Mobilnet of South Texas vs. Pascouet*, 61 S.W.3d 599, 616 (Tex. App. –Houston [14 Dist.] 2001, pet denied).

28

Thus, the foregoing legal principles are applicable to the facts in this present case, and the trial court did not abuse its discretion by denying a new trial.

## Conclusion and Prayer

In conclusion, the trial court judgment should be affirmed because the evidence at trial supports the judgment of possession in favor of Appellee. It is reasonable to conclude, based on all inconsistencies in the documents relied upon by Appellant to show any right to possession of the premises, reasonable minded people would agree with the trial court's decision. Appellant had a fair opportunity to present his argument, and the trier of fact judged his credibility. The trial court decided that Appellant's evidence was not credible, and entered a judgment for possession to Appellee.

WHEREFORE, PREMISES CONSIDERED, Appellee asks this Court to affirm the trial court's decision and tax appeal costs to Appellant, and grant the Appellee all other relief at law and in the interest of justice.

Respectfully,

W M Roberson

Nov. 16, 2015.

P.O. Box 842583
Houston, TX 77284-2583

Appellee (*Pro Se*)

## Certificate of Service

On this day a copy of this document was mailed to counsel of record, Nasischa Biscette, 1811 Bering Dr. #300, Houston, TX 77057.

_W M Roberson_    11-16-15

W M Roberson

## Certificate of Compliance

On this day, I certify that the computer generated word count for the entirety of this Appellee's Brief (excluding the caption, statement for oral argument, table of contents, index of authorities, statement of case, signature, certificate of service, and certificate of compliance) total less than 6,500 words.

_W M Roberson_    11-16-15

W M Roberson

## Appendix

Petition for Eviction . . . . . . . . 5

Final Judgment . . . . . . . . . 25-26

Rental Agreement . . . . . . . . 28-32

Special Warrant Deed . . . . . . . 36-37

Signature of Wilmore – page 7 of 8 . . . . . A-1

**Petition for Eviction**

89M44

1058132

WM Roberson
_____
Landlord (Plaintiff)

vs.

Aaron Chevalier _____ * al
Tenant (Defendant)

§ Case No. EV31C 0071428
§ IN THE JUSTICE COURT OF _____
§ Harris County, Texas Precinct 3, Place 1
§ 14350 Wallisville Road, Suite 102
§ Houston, Texas 770459

C.C.C.L. #1

2015 JAN 8 PM 3: 06 FILED

Name of Landlord (*provide full legal name*): WM Roberson _____, referred to as "Plaintiff".

**Tenants.** 1. Name of Tenant (*provide full legal name*): Aaron Chevalier
Defendant may be served at (provide street address and telephone number, if known):
6922 Cluett, Houston, TX 77028 , (832) 788-3321
All other home and work addresses of this Defendant in Harris County that are known to the Plaintiff are:
_____

☑ Plaintiff knows of no other home or work addresses in Harris County.

2. **Name of Tenant** (*Provide full legal name*): _____
Defendant may be served at (*provide street address and telephone number, if known*): _____

All other home and work addresses of Defendant in Harris County that are known to the Plaintiff are:
_____

☐ Plaintiff knows of no other home or work addresses of this Defendant in Harris County. Tenant(s) are referred to as "Defendant".

**Premises.** Plaintiff seeks possession of following Premises (describe premises, i.e. house, apartment building, including street address):
Same Address Above 6922 Cluett, Houston, TX 77028

**Grounds for Eviction.** Plaintiff seeks to evict Defendant for the following reason:

☑ **Failure to pay rent:**
Residential Lease: ☑ Written ☐ Oral     Beginning date of Lease: _____ End date of Lease: _____
Rent: $ 825.00 ___ per month ___ (e.g. month, week)     Date of last rental payment: Feb. 2013
Total amount of rent due and unpaid on date of filing: $ 10,000.00
Rent subsidized by government: $ _____ paid by _____ : $ _____ paid by Defendant

☑ **Violation of lease:** Tenant violated Paragraph No. 28 of the Lease by (describe violation): Failure to Vacate &
" " Pay Rent

☑ **Holding over after termination of right to possession:** Date of notice of termination: April 2013

☐ **Foreclosure:** Plaintiff purchased the Premises at foreclosure on _____
    ☐ Plaintiff intends to live in the Premises as Plaintiff's primary residence.
    ☐ Defendant is a tenant of the former owner; End date of Lease: _____ Rent: $ _____ Per _____

**Notice to Vacate:** Date Notice to Vacate Delivered: April 2013, & Dec 15, 2014 Manner of delivery: Certified Mail, RRR
& Regular "

☐ **Attorney fees:** Plaintiff seeks attorney fees as follows:
Contractual: Lease (written) Paragraph No. _____ Amount of attorney fee claimed: $ _____
Statutory: Written demand to vacate sent on: _____ Date received: _____ Attorney fee Claimed $ _____

Plaintiff requests possession of the Premises, past due rent, if applicable, attorney's fees, if applicable, court costs and such other and further relief to which Plaintiff may be entitled.

Respectfully submitted,

_____
Signature of Plaintiff, Plaintiff's Attorney or Authorized Agent
Address: PO Box 842583

WM Roberson
Printed Name
City: Houston ___ State: TX Zip: 77284 - 2583

Daytime Telephone: _____ Fax Number: _____ State Bar No. _____
☐ Plaintiff consents to the e-mail service of the answer and any other motions or pleadings to this e-mail address.
    E-mail Address: _____

STATE OF TEXAS §
COUNTY OF HARRIS §
SWORN TO BEFORE ME on 12-09-14 _____, by W Roberson _____, Plaintiff.

_____
Notary Public

11487-05-14

5

"CLOSED"

CAUSE NO. 1058132

| | |
|---|---|
| W. M. ROBERSON<br>PLAINTIFF | IN THE COUNTY CIVIL |
| | COURT AT LAW # ONE |
| Vs. | OF HARRIS COUNTY, |
| AARON CHEVALIER<br>DEFENDANT | TEXAS |

## JUDGMENT

On the ___ day of _____, 20__, in the above entitled and numbered cause, came Plaintiff and announced ready for trial. Defendant,

_x_ also appeared and announced ready for trial.

___ having been duly notified of this trial setting, failed to appear.

No jury fee having been paid, the parties proceeded to trial without the intervention of a jury. The Court, after considering the pleadings, evidence and arguments of the parties, is of the opinion that Defendants are guilty of forcible detainer of the hereinafter described premises and that Plaintiff, have and recover from Defendant as follows,

ORDERED, ADJUDGED, AND DECREED that Plaintiff W. M. ROBERSON does have and recover possession of the premises from Defendant

AARON CHEVALIER____ located at 6922 CLUETT STREET____,

HOUSTON_____, Harris County, Texas 77028; that a Writ of Possession issue to the proper officer commanding him to seize possession of said premises and deliver same to Plaintiff after said Writ of Possession has been duly filed by Plaintiff if Defendants

**25**

have not vacated the herein described premises by <u>MARCH 31, 2015</u>.

The supersedeas bond to stay execution of this Judgment is hereby set at

$ <u>500</u>. Said bond to be either cash or corporate surety bond.

The Clerk of the Court if hereby ORDERED to issue all writs and processes,

including but not limited to Writs of Execution, in aid of satisfaction of this judgment.

This is a Final Judgment disposing of **ALL** issues and **ALL** parties, and **ALL**

prior interlocutory Orders of the Court in this cause are hereby made Final.

SIGNED THIS <u>24</u> DAY OF <u>February</u>, 20<u>15</u>.

_____
JUDGE PRESIDING

I hereby certify that the last known address of Defendant is:

Defendant's Name: _____

Address: _____

City, State, Zip: _____

_____
**Plaintiff's Signature**

_____
**Plaintiff's Name**

**RECORDER'S MEMORANDUM:**
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

FILED
2015 FEB 24 PM 4 03

26


2015022 7:12 54:0 00 1 8

## RENTAL AGREEMENT

This Rental "Agreement" dated 05-27-12, by and between Wills Estates & More Group ("Landlord"), and _Aaron Chevalier_ ("Tenant"), whereby parties agree that:

1. **PREMISES.** In consideration of rental payment(s) promised by this contract agreement, Landlord rents to Tenant the "Premises" located at: 6922 Cluett Street, Houston, Texas 77028, Lt 16A & 16B, Blk D, Settegast Gardens Sec 2, in Harris County. No other portion of land and/or building wherein the premises is located is included herewith, unless expressly provided by this agreement.

2. **TERM.** Rental terms begin on 06-01-2012 and terminate on 07-01-2012 and a month-to-month with the same terms and conditions thereafter, save any changes made pursuant to law, until terminated.

3. **MANAGEMENT.** Any issue or concern shall be promptly addressed to the premises property manager: WM Roberson, PO Box 842583, Houston, TX 77284-2583, wmr12795@yahoo.com, Phone 281-345-7268.

4. **RENT PAYMENTS.** Tenant shall pay by check or money order to Management rent payments of USA $550.00, in advance on the 1st day of each month. Rent payments shall be made to Management at PO Box 842583, Houston, Texas 77284-2583, which may be changed from time to time by Landlord.

5. **SECURITY DEPOSIT.** On the signing date of this agreement, Tenant shall also pay to Management, in trust, a security deposit of $550.00, to be held and disbursed for Tenant's damages to the premises or other default (if any) under terms of this agreement as provided by law.

6. **POSSESSION.** Tenant shall have possession of premise on first day of terms of agreement, and shall yield possession to Management on last date of terms, unless otherwise agreed by parties in writing. At expiration of terms, Tenant shall remove its goods and effects and peaceably yield up premises to the Management in as good a condition as when delivered to Tenant, ordinary wear and tear excepted.

7. **USE OF PREMISES, ABSENCE.** Tenant shall occupy and use premises as a full-time residential dwelling unit. Tenant shall notify Management of any anticipated extended absence of more than 7-days from premises, by not later than 1st day of any extended absence.
No retail, commercial or professional use of premises is allowed unless Tenant receives written consent of Management, and such use conforms to applicable zoning laws. In such case, Management shall require Tenant to obtain liability insurance for benefit of Landlord. Failure to abide by this provision shall constitute a material breach of this agreement and be just cause for eviction.

8. **OCCUPANTS.** No more than 1 people may reside on premises, unless written consent of Management is obtained. This agreement and occupancy of premises is binding, individually and severally, on each person(s) specifically named and who signs this rental agreement, regardless of named person's occupancy of the premises.
Authorized Tenants/Occupants are: _Aaron Chevalier_

Tenant may have guest on premises for not over 7-consecutive days or 30-days in a calendar year, and no more than 2-guest per bedroom at any one time. Person staying more then 7-consecutive days or more than 30-days in a calendar year SHALL NOT be considered original tenants of premises.
Tenant must obtain written approval of Management if an invitee tenant will be present at premises for more than 7-consecutive days or 30-days in a calendar year.



9. FURNISHINGS. The "Landlord-Tenant Checklist" attached and incorporated by reference hereto lists items of furnishings or appliances that will be provided by Landlord. Tenant shall return all items at end of rental term in a condition as good as existed at beginning of term, normal wear and tear excepted.

10. DAMAGES. Any damages to items of property located in or on premises shall result in confessed and liquidated damages of Tenant as indicated herein: See "Landlord-Tenant Checklist" attached hereto.

11. RENEWAL TERMS. This agreement shall automatically renew for an additional period of one month per renewal term, unless other party gives written notice of termination no later than 14-days prior to end of term or renewal period. The rental terms during renewal period shall be same as those contained in this agreement, except rental installment payment may be demanded at $ _____ per month.

12. KEYS. Tenant will be given 1-key to each lock on premises (if any). If all keys are not returned to Management following termination of this agreement, Tenant shall be charged $20.00 per key. Tenant is not permitted to chance any lock or place additional locking devices on any door, window or gate of the premises without Management approval prior to installation. If allowed, Tenant shall provide Management with 1-key to any changed lock immediately upon installation.

13. LOCKOUT. If Tenant becomes locked out of premises, Tenant will be charged $15.00 to regain entry.

14. STORAGE. Except for any shed on premises, no additional storage space outside premises is provided or authorized by this agreement.

15. PARKING. This agreement does not provide for parking space for large or non-operational motor vehicles of any kind on or about the premises.

16. MAINTENANCE. Management shall keep in good repair the roof, exterior walls, foundation, sewer, plumbing, heating, air conditioning, wiring, driveway, sidewalk and all other maintenance responsibilities required by law, except when repairs are necessitated by misuse or negligence of Tenant, its invitee, agent or employee. Tenant shall maintain premises in a reasonably safe, serviceable, clean and presentable condition, and except for repairs and replacements to be made by Management pursuant to the preceding sentence, shall make all repairs, replacements and improvements to premises, including all changes, alterations or additions ordered by any lawfully constituted government authority directly related to Tenant's use of premises. Tenant shall (a) comply with all obligations primarily imposed upon tenants by applicable provisions of building and housing codes materially affecting health and safety, (b) keep the premises as clean and safe as condition of premises permit, (c) dispose from dwelling unit all ashes, rubbish, garbage and other waste from premises in a clean and safe manner, (d) keep all plumbing fixtures as clean as their condition permits, (e) use in a reasonable manner all appliances, electrical, plumbing, sanitary, heating, ventilation, air-conditioning and other facilities, (f) not deliberately or negligently destroy, deface, damage, impair or remove a part of the premises, or knowingly permit a person to do so, and (g) conduct himself or herself in a manner that will not disturb a neighbor's peaceful enjoyment of the neighborhood. Except in an emergency, maintenance and repair requests must be in writing and delivered to Management. A repair request shall be deemed permission for Management or its Agent to enter premises to perform any necessary maintenance or repair in accordance with the ACCESS BY MANAGEMENT TO PREMISES provision herein, unless otherwise specifically requested in writing by Tenant.
Tenant shall not place any unreasonable restrictions upon Management or its Agent's access or entry. Management shall have expectation that premises are in a safe and habitable condition upon entry.

29

17. UTILITIES AND SERVICE. Tenant shall be responsible for utilities and services billed to premises.

18. TAXES. Landlord may pay all real estate taxes and assessments levied against premises. All personal taxes, assessments and charges whatsoever resulting from use of premises shall be Tenant's responsibility.

19. PROPERTY INSURANCE. Landlord and Tenant shall each be responsible to maintain appropriate insurance for their respective interests in premises and property located on premises.

20. NON-SUFFICIENT FUNDS. Tenant shall be charged a $35 reimbursement expense incurred by the Management for each check returned for lack of sufficient funds. Additionally, a check returned due to insufficient funds shall be subject to Late Payments provision below, and all charges shall be immediately due from Tenant and failure to make immediate payment shall constitute a default in this agreement. Management reserves right to demand payment by money order or other certified funds on all future payments in event of an insufficient funds check, and to seek other remedies available to Management as payee of a dishonored check. Management and Tenant agree that 3-returned checks in any twelve month period shall constitute frequent return of checks due to insufficient funds and may be considered just cause for eviction.

21. LATE PAYMENTS. For any payment that is not paid within three (3) days after it is due, Tenant shall pay a late fee charge of $25 to Management.

22. DEFAULTS. Tenant shall be in default of this agreement if Tenant fails to fulfill any rental obligation or term by which Tenant is bound. Subject to any governing provision of law to the contrary, if Tenant fails to cure any financial obligation within three (3) days (or any other obligation to quit within ten days) after written notice of such default is provided by Management to Tenant, Management may elect to cure such defaults and the cost of such action shall be added to Tenant's financial obligations under this agreement. All sums of money or charges required to be paid by Tenant under this agreement shall be additional rent, with interest at law rate, whether or not such sums or charges are designated as "additional rent". The rights provided by this provision are cumulative in nature and are in addition to any other rights afforded by law.

23. TERMINATION UPON SALE OF PREMISES. Notwithstanding any other provision, Management may terminate this agreement after 30-days written notice to Tenant that the premises have been sold.

24. TERMINATION CLAUSE. Tenant may, upon 14-days' written notice to Management, terminate this rental agreement provided Tenant pays termination charge equal to 1-months rent or maximum allowed by law, whichever is less. Termination will be effective as of last day of calendar month following end of the 14-days notice period. Termination charge will be in addition to all rent due up to termination day.

25. MILITARY TERMINATION CLAUSE. In event Tenant is, or becomes, a member of United States Armed Forces on extended active duty and hereafter receives permanent change of station orders to depart from area where premises are located, or is relieve from active duty, retires or separates from the military, or is ordered into military housing, then in any such event, Tenant may terminate rental agreement upon giving thirty (30) days written notice to Management. Tenant shall also provide to Management a copy of official orders or a letter signed by Tenant's commanding officer, which warrants termination under this clause. Tenant shall pay prorated rent for any days (he/she) occupies dwelling past first day of month. Any security deposit will be returned to Tenant, provided there are no damages to premises.

26. DESTRUCTION OR CONDEMNATION OF PREMISES. If premises are partially destroyed by fire or other casualty to an extent that prevents conducting of Tenant's use of premises in a normal manner, and

*AC*

**30**

if damage is reasonably repairable within thirty (30) days after occurrence of destruction, and if cost of the repair is less than $1,000.00, Landlord may repair premises and a just portion of rent payments should be abated during period of repair according to extent to which premises have been rendered untenantable. However, if damage is not repairable within thirty (30) days, or if cost of repair is $1,000.00 or more, or if Landlord is prevented for repairing damages beyond Landlord's control, or if property is condemned, this rental agreement shall terminate upon fourteen (14) days' written notice of such event or condition by either party and any unearned rent paid in advance by Tenant shall be apportioned and refunded. Tenant shall give Management immediate notice of any damage to the premises.

27. HABITABILITY. Tenant has inspected premises and fixtures (or has had premises inspected on behalf of Tenant), and acknowledges that premises are in a reasonable and acceptable condition of habitability for intended use, and the agreed rent payments are fair and reasonable. If condition changes so that, in Tenant's opinion, the habitability and rental value of premises are adversely affected, Tenant shall promptly provide reasonable notice to Management.

28. HOLDOVER. If Tenant maintains possession of premises for any period after termination of this rental agreement (the "Holdover Period"), Tenant shall pay to Management rental payment(s) during the Holdover Period at a rate equal to 150% of stated rental dollar amount (or maximum amount allowed by law, if any).

29. CUMULATIVE RIGHTS. The rights of the parties under this rental agreement are cumulative, and shall not be construed as exclusive unless otherwise required by law.

30. REMODELING OR IMPROVEMENTS. Tenant is allowed to conduct construction or remodeling (at Tenant's expense) only with written consent of Management, which should not be unreasonably withheld. At end of rental term, Tenant shall be entitled to remove (or at request of Management shall remove) any such fixtures of personal property, and shall restore premises to substantially the same condition that existed at commencement of this rental agreement.

31. ACCESS BY MANAGEMENT TO PREMISES. Subject to Tenant's consent (which shall not be unreasonably withheld), Landlord shall have the right to enter premises to make inspections, provide necessary services, or show unit to prospective buyers, mortgagees, tenants or workers. Management will provide reasonable notice of its intention to enter premises. If Tenant has, after written notice to cease, continued to deny Management/Owner access to unit, as required by State law, such failure is a substantial breach of this agreement and is just cause for eviction. However, the Management shall not assume any liability for care or supervisor of premises. As provided by law, in case of an emergency, Management may enter premises without Tenant's consent. During last 3-months of this rental agreement, or any extension of this rental agreement, Landlord shall be allowed to display any necessary signs to rent, sale or show the premises to prospective tenants.

32. INDEMNITY REGARDING USE OF PREMISES. To the extent permitted by law, Tenant agrees to indemnify, hold harmless, and defend Landlord/Management from and against any and all losses, claims, liability, and expenses, including reasonable attorney fees, if any, which Landlord/Management may suffer or incur in connection with Tenant's possession, use or misuse of premises, except for the Landlord's or Management's intentional and wrongful acts or negligence.
Tenant hereby expressly releases Landlord and/or its agent from any and all liability for loss or damages to Tenant's property or effects whether in premises, garage, storerooms or any other location in or about the premises, arising out of any cause whatsoever, including but not limited to rain, plumbing leakage, fire or theft, except where such damages has been adjudged to be result of gross negligence of Landlord, its agent, employee, heir, successor and/or assignee.



**33. ACCOMMODATION.** Landlord agrees to and is committed to complying with all applicable laws providing equal housing opportunities. Thus, Landlord will make reasonable accommodations for known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or a tenant, unless undue hardship would result. It is the applicant or tenant responsibility to make Landlord aware of any required accommodation. In writing, the individual with disability shall specify the nature and effect of the disability and any accommodation needed. If after thoughtful consideration and evaluation, the accommodation is reasonable and will not impose an undue hardship, Landlord will make accommodations. The Landlord/Owner reserves the right to require appropriate medical verification of the disability.

**34. DANGEROUS MATERIALS.** Tenant shall not keep or have on the premises any article or thing of a dangerous, flammable, or explosive character that might substantially increase danger of fire on premises, or that might be considered hazardous by a responsible insurance company, unless the prior written consent of Management is obtained and proof of adequate protection is provided by Tenant to Management.

**35. COMPLIANT WITH REGULATIONS.** Tenant shall promptly comply with all laws, ordinances and regulations of the federal, state, county, municipal and other authorities, and fire insurance underwriters. However, Tenant shall not by this provision be required to make any alterations to premises exterior of building or an alteration of a structural nature.

**36. MECHANIC'S LIENS.** Neither Tenant nor anyone claiming through Tenant shall have the right to file mechanic's liens or any other kind of lien on premises, and any filing of this agreement constitutes notice that such liens are invalid. Further, Tenant agrees to (1) give actual advance notice to any contractors, subcontractors or suppliers of goods, labor, or services that such liens shall not be valid, and (2) take whatever additional steps are necessary in order to keep premises free of all liens resulting from any construction done by or for the Tenant.

**37. SUBORDINATION OF LEASE OR RENT.** This rental agreement is subordinated to any valid mortgage that now exists, or may be given later by Landlord, with respect to the premises.

**38. ASSIGNABILITY, SUBLETTING.** Tenant shall not assign or sublease or rent any interest in the premises, nor assign, mortgage or pledge this rental agreement. This is a blanket prohibition, meaning no replacement tenant(s) shall be permitted and no additional tenant or occupant shall be allowed on the premises, even if a Tenant leave the premises. This prohibition applies to each and every term of this rental agreement in regard to space leased or rented to Tenant. Any waiver of this prohibition must be secured from Management in writing. In event the prohibition is invalidated or lifted, Tenant, Management and any subtenant or assignee agrees to be bound by each and every provision contained in this rental agreement.

**39. NOTICE.** Notices under this rental agreement shall not be valid unless given or served in writing and forwarded by first class mail, postage prepaid, addressed to the party at appropriate address set forth below. Such addresses may be changed from time to time by either party by providing notice as set forth below. Notices mailed in accordance with these provisions shall be deeded received on the third day after postmark.

Manager:
WM ROBERSON
PO BOX 842583
HOUSTON, TX 77284-2583
wmr12795@yahoo.com
281-345-7268

32



STATE OF TEXAS      *       KNOW ALL MEN BY THESE PRESENTS:

                   *

COUNTY OF HARRIS    *

## SPECIAL WARRANTY DEED

For $10.00 and other valuable and sufficient consideration received and traded, the undersign Grantor hereby irrevocably sell, grant and convey to Grantee W M Roberson, of said county and state, all her rights, title, claim and interest in the "as-is" real property, described as:

6922 Cluett St., Houston, TX 77028, Harris County, Lts 16A & 16B, Blk D, Settegast Gardens, Sec 2, (HCAD ## 0805370000022 and 0805370000021), according to the map or plat thereof recorded in volume 41, page 38, et al., of the map records of said county and state.

To have and hold said property with all its rights and appurtenances, by Grantee, his assign, heir, successor or representative forever. Grantor binds herself, her assign, heir or representative to warrant and forever defend the property against any lawful claim by or under her exclusively; provided that it is expressly understood and agreed that said property conveyance is made:

Subject to life estate of Grantor, exclusively, to reside in property, with the remainder to Grantee.

Subject to but not assuming any debt on the property by Grantee, with property tax to be paid by any executor of estate without bond or adjudication up to and including year of death of Grantor.

Subject to any other just easement, exception, covenant, condition, restriction, reservation or rights effecting said property appearing in the record, but not otherwise.

Witnessed, sworn and signed in each others presence on this ___9___ day of March 2005, by:

*Ella F Wilmore*
Grantor Ella F Wilmore

Witness J Garcia

Witness R Garcia

## Acknowledgement

On this day, known and present Signatories, respectively, at least 19-years of age, personally appeared before me being duly sworn, did acknowledged the purpose, intent and validity of this instrument and each others soundness of mind as certified by my official subscription and seal.

*Charles E Waitmon*    3/9/05
Official Signature/Date/Seal

CHARLES E. WAITMON
MY COMMISSION EXPIRES
MAY 31, 2005

Return record and/or tax statement to:
W M Roberson, ~~Houston, Texas~~         (Code #443120)
PO Box 842583        77284-2583

E

E

36



FILED

2014 DEC 19 PM 3: 57

*Stan Stewart*
COUNTY CLERK
HARRIS COUNTY, TEXAS

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas

DEC 19 2014



*Stan Stewart*
COUNTY CLERK
HARRIS COUNTY, TEXAS

37

**LOAN #: 5590378**

the Note or this Security Instrument, including a judgment for any deficiency that results from Lender's sale of the Property for an amount less than is owing under the Note, thereby subjecting Borrower's other assets to satisfaction of the debt.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Paragraph 23 shall not impair in any way the lien of this Security Instrument or the right of Lender to collect all sums due under the Note and this Security Instrument or prejudice the right of Lender as to any covenants or conditions of the Note and this Security Instrument.

24. **Proceeds.** The Borrower has not been required to apply the proceeds of the Extension of Credit to repay another debt except a debt secured by the Property or a debt to another lender.

25. **No Assignment of Wages.** The Borrower has not assigned wages as security for the Extension of Credit.

26. **Acknowledgment of Fair Market Value.** Lender and Borrower have executed a written acknowledgment to the fair market value of Borrower's Property on the date the Extension of Credit is made.

27. **Rider(s) to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the riders were a part of this Security Instrument.

[Check as applicable]

☐ Texas Home Equity Adjustable Rate Rider      ☐ Texas Home Equity Condominium Rider

☐ Texas Home Equity Planned Unit Development Rider      X **Texas Home Equity Affidavit & Agreeme**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

**DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.**

> **YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THIS LOAN WITHOUT PENALTY OR CHARGE.**

_____ _Ella F Wilmore_____ (Seal)
ELLA F WILMORE                      -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

*A-1*